Chief Justice Robertson
delivered the Opinion of the Court—
This is an action of slander, by Greenwade and wife, against Williams, for falsely and maliciously uttering and publishing the following words: — “negro Jude said that-Mrs. Greenwade was a drunken whore, and it is rumored every where.” — On the general issue, verdict and judgment were rendered for one hundred dollars in damages; and Williams now urges three objections to the judgment: first — that the words are not actionable; — ■ second — that the Circuit Court erroneously permitted evidence to be given of the good character of Mrs. Greenwade, when her reputation had not been assailed by any evidence on his part; — and, third — that the Court' also erred in refusing to permit him to prove, that “negro Jude” had “said” that Mrs. Greenwade was “a drunken whore.”
To say a Témalo ’“is a drunken '•whore,” is to accuse her of forni■cation or adultery — which is actionable by statute. (S X. 344.) The repetition of another’s slander may be actionable.
In suits for slander, evidence of good character, an aggravation— •as well as-of bad, in mitigation, of ■damages, is admissible.
Matters that may be pleaded in justification of a slander, are not generally,admissible in mitigation.
'Facts, tending to show aggravated, or actual malice, may be proved; and, e con-verso, facts (not a justification,) ¡to show, thdt there was no malice, 'or less than, would be presumed, may be proved, in mitigation; and with thatview,adef’t may prove that the words were only a statement of what another had said.
The first and second objections are certainly untenable. As the statute of 1811 makes a charge of fornication or adultery slanderous and therefore actionable, the words uttered in this case, necessarily import slander, because it is impossible to be a whore without being guilty of fornication or adultery; and to repeat a slander, as coming from another, may be injurious and wrongful, and when it is so, is of course, actionable. And, as injury to character is the gravamen of slander, goodness of character may be proved in aggravation, as badness of character may be shown in mitigation, of damages, in an action of slander.
But the third objection is more imposing.
In slander it is a general rule, that matter which may be pleaded in justification is inadmissible as evidence in mitigation; because, the defendant having failed to rely, in his defence, on the truth of the charge, the plaintiff might be surprised by an attempt to prove it. 1. Chitty on Plea. 531; Shephard vs. Merril 13. Johnson’s Rep. 475.
It is also a general rule, in the same species of action, that a fact tending to prove actual malice, or to show that it was peculiarly rancorous, may be proved in aggravation of damages, and that ¡e converso, — subject,however, to the exception in .the foregoing rule, — a fact tending to show, that there was no malice, or to reduce it in degree, may be admissible as evidence in mitigation; and consequently — subject to the exception of matter of justification — proof that a party had only repeated what he had heard, might be admissible in mitigation, because, as great a degree of malice may not be implied in the repetition, as in the origination of a charge importing slander. 2. Starkie on Ev. 880.
It would seem, then, that, if Williams could not have pleaded in justification the fact which he offered to prove in mitigation, his evidence was improperly rejected — the jury, and not the court, having a right to determine how far the fact that he had previously heard “negro Jude'” say what he -had published, as having been said by her, was entitled to consideration in deciding on the degree of malevolence by which he was actuated.
A. defendant cannot justify asían ■der uttered as true, by proving that he had heard it.
The question whether,.the fact that a deft merely repeated, without malice, the slander of another, whom he named at the time, can amount to a justification — discussed, hut not decided. But held, that a whiteperson can not justify the injurious repetition of a slander uttered by a negro. He may, however, prove that a negro had first spoken the words, and that he merely repeated them, as coming from the negro; and the jury may allow the circumstance what weight they think fit. And if it be made to appear, that the words were so repeated, with good intentions, or without malice, the action must fail. — Tho’ the mere absence •of proof of .express malice,will not excuse.
It is well settled, that a person sued for uttering as true, slanderous words, cannot justify by pleading that he had heard what he had uttered. 2. Starkie, supra and the cases therein cited, and Smally vs. Anderson and wife, 4. Mon. 368.
It has been said, however, that a defendant, sued for repeating, as coming from another person, words importing slander, may plead in justification, the fact that the person, to whom, as the author, he had referred, in repeating the slanderous words, had previously uttered them, as he had only said he did. And this dictum seems to have been incidentally recognised by this court in the case of Robinson vs. Harvie, 5 Mon. 520.
The Earl of Northington’s case (12. Co. 132) was the first in which such a doctrine is known to have been intimated ; and the suggestion to that effect, in that case, was altogether extrajudicial. In Dole vs. Lyon, 10. Johnson’s Rep. 449, Kent, Ch. Jus. evidently dissents from the reasonableness, as well as the authoritativeness, of such a doctrine, and, without suggesting distinctly whether he would recognise it in an action for oral slander, refused to apply it in a civil suit for a libel. But in Pennsylvania, it has been adjudged to be applicable, not only to suits for oi'al slander, but to actions for libel, if tlie repetition was without malice. Binns vs. McCorkle, 2. Browne’s Rep. 90. The reason assigned for the justification is, that, by accompanying the reiteration with the name of another person, who had before published the words, which had been afterwards only echoed from him, the injured party may be able to obtain redress by suing that person, thus designated as the author by the republication itself. It may be well doubted whether this reason should be deemed satisfactory, or is consistent with the principle on which slander is made to be actionable. If the first publisher be insolvent, or inaccessible, no reparation can be obtained from him; and certainly, a mischievous repetition of slander, not believed by the re-publisher, is as inexcusable, and may be as injurious as the first publication; aud indeed, it may possibly be much more so; for the rule, as recognised and stated, applies to the publication of slanderous words communicated in *435 confidence to the person who repeated them, and to him only; so that, had he never published them, they might never have obtained currency or credit, and would have been inoffensive, or comparatively so. Moreover, the endorser of a slander may, by his station or character, give credit and effect to words which otherwise would have passed away as false or idle.
But we will not reason on this subject, because a judicial opinion upon it, is not necessary in this case. The few suggestions just made were intended only to show, that we consider the doctrine alluded to doubtful on the score of adjudged cases, and, at least, as doubtful upon principle and analogy; and thus to furnish what we deem a sufficient reason for not extending it. Mr. Chitty says, that such a plea is not good, unless it aver that the repetition was innocent and without malice; that the defendant believed what he repeated; made the repetition on a justifiable occasion, and that the author had published the same words fialsdy and maliciously, so as to entitle the person injured to an action against him. And we concur, as we are inclined to do, in his suggestion, “ that it “ is extremely probable that the general doctrine applied (as “ already shown) to libels, would, (should) be applied to oral “ slander” — unless the distinction which has been sometimes adjudged to exist, as just suggested, be conclusively settled by authority.
But the rejected evidence was not as comprehensive as the words for which the action is brought, and, in other respects, would not be alone sufficient' to sustain such a plea as Chitty seems to consider necessary. Besides, a slave is not suable; and therefore, if the rule we have been considering be settled by authority, we would not apply it to a repetition of slanderous words which had been uttered by a slave. We would not be inclined to extend it to negroes. If a white person venture to publish, in a manner implying malice, the slander of a negro, the slandered party should not be driven to the humiliating alternative of submitting in silence, or of suing the negro for character. Such a social organization as ours will not, in our judgment, permit a white person to justify the injurious repetition of a negro’s slander.
*436 But the fact that the re-publisher believed what he repeated as coming from á negro, might, in some degree? palliate the wrong, and mitigate the damages. And if repeate¿ tfje W01-ds under such circumstances as would have excused an original publication, or a general publication without designating another as the author, he should not be liable at all, because the legal implication of malice arising from the falsity of the words,. wrouldrin such a case, be repelled; and therefore the-repetition would not amount to slander.
But the mere absence of proof of express malice should-, not excuse altogether; for a free agent who knows, as. every white man, who repeats, without excusable cause- or benevolent motive, the slander of a negro, must know, that he is jeoparding another’s character, should never be exonerated on the simple plea of recklessness.
We are,, therefore, of the opinion, that the fact which Williams offered to prove could not have been pleaded as a justification.
And consequently, as this Court cannot decide that the rejected evidence might not, in the opinion of the jury, have been entitled to some mitigating influence, it seems toáis that the Circuit Judge erred in refusing to admit it. Whether it should have any effect-, and what, effect, the jury, upon a careful consideration of all the facts, should have the right to determine.
Wherefore, the judgment of the Circuit Court is reversed, and the cause remanded for anew trial.