Points decided.

[Filed January 15, 1889.]

# MAY DAVIS, RESPONDENT, *v.* S. P. SLADDEN, APPELLANT.

SPECIAL DAMAGE — SLANDER — ACTIONABLE WORDS. — At common law, there was no redress for defamatory words, unless they imputed a crime, or related to a man's profession or trade, or caused some special damage.

SPECIAL DAMAGES — WHEN MUST BE ALLEGED AND PROVEN. — Words spoken of a female charging her with adultery or fornication or incontinence in any form were not actionable unless special damage ensued, which were required to be alleged and proved.

SLANDER — ACTION FOR AT COMMON LAW. — Defamation was a subject of spiritual censures, the remedy for common bad language being in the ecclesiastical courts; and the fact that it was so explains the reason of the rule as it exists at common law.

ECCLESIASTICAL COURTS — JURISDICTION OF. — Adultery being a spiritual offense, cognizable only in the ecclesiastical courts, and the punishment being confined to the infliction of penance *pro salute animæ*, it resulted, to avoid punishing a party twice for the same words, that to charge a married woman with adultery was not actionable *per se*, and that no redress could be obtained therefor at common law, without special damage is shown.

STATUTE LAW — EFFECT OF IN ACTIONS FOR SLANDER. — And this is the rule applied to the several states in which the common law prevails, where such offenses as adultery and fornication have not been made indictable by statute.

WORDS ACTIONABLE PER SE. — Words, then, are actionable in themselves only where an offense is imputed by them for which the party is liable to indictment and punishment, either at common law or by the statute.

ID. — IMPUTING ADULTERY TO MARRIED WOMAN. — To say of a married woman that she is a prostitute is necessarily to impute to her the guilt of adultery, and as under our criminal code adultery is indictable and punishable, such words charge a crime, and are actionable *per se*.

[ON REHEARING. — FILED MARCH 14, 1889.]

SLANDER — REPETITION — JUSTIFICATION. — Slanderous words cannot be justified by proof that the defendant only repeated what he heard another person say concerning the plaintiff.

APPEAL from Lane County.

*S. W. Condon, George A. Dorris,* and *J. K. Weatherford,* for Respondent.

*C. B. Bellinger, L. Bilyeu,* and *Washburn & Woodcock,* for Appellant.

LORD, J. — This is an action for slander. The complaint alleges that the defendant, in the presence and hearing of L. B. Rossman and other persons, falsely and maliciously spoke of and concerning plaintiff as follows: "Fenton sent those two prostitutes to talk with my wife" (meaning this plaintiff and her mother). And at the same time and place, as follows: "Do you think more of the little fee you will get out of these low, disreputable people [meaning the plaintiff] than you do of the friendship of my wife." And as follows: "If you bring my wife into court against this prostitute [meaning the plaintiff], she nor none of our family will ever speak to you again"; and "my wife would not have that prostitute on her land [meaning by 'that prostitute' the plaintiff], not for any money. All the neighbors are complaining about it now. You reside in that neighborhood yourself, and cannot afford to have such people there." That, at the time of uttering said words by the defendant, the plaintiff was and now is a married woman, and has a husband living, and has ever borne a good name and character above reproach, etc.

The complaint does not allege special damages resulting from the speaking of the words by the defendant, and the only question raised is: Are the words charged actionable *per se?*

The distinction early taken in the law between words actionable and words not actionable in themselves is, that in the former the law adjudges them to be injuries, though no special loss can be proved, while in the latter, in addition to the words, it was necessary for the plaintiff to allege and prove special damages. The more difficult and vexed question, however, has been to determine what words were actionable *per se.*

It was said by Spence, J., that "there is not, perhaps, upon any subject so much uncertainty in the law as when words shall be in themselves actionable." (*Brooker* v. *Coffin*, 5 Johns. 192.) And it may have been for some such reason that Holt, C. J., more than a century before, was led to say that "it was not worth while to be learned on the subject."

At common law, there was no redress for defamatory words, unless they imputed a crime, or related to a man's trade or profession, or caused some special damages. It mattered not that the words spoken involved an attack on personal character, or how gross the immorality or moral delinquency imputed by them, unless they charged a crime, such words were only actionable when special damage ensued. The rule as laid down by Starkie is, that "no charge upon the plaintiff, however foul, will be actionable, unless it be an offense punishable in a temporal court of criminal jurisdiction." (1 Starkie on Slander, 21.) Except when applied to a person in his calling or the conduct of his business, as to say of a man he is a "cheat" or a "swindler" (*Chase* v. *Whitlock*, 3 Hill 138; *Wererbach* v. *Trone*, 2 Watts & S. 408; *Osborne* v. *Bacon*, 6 Cush. 185), or a "damned rogue" (*Oakley* v. *Farrington*, 1 Johns. Cas. 129; *Caldwell* v. *Abbey*, Hardin, 529), or a "scoundrel" or "blackleg" (*Tassel* v. *Capron*, 1 Denio, 250; *Stevenson* v. *Hayden*, 2 Mass. 409; *Ford* v. *Johnson*, 21 Ga. 399; *Artietta* v. *Artietta*, 15 La. Ann. 48), is not actionable. Nor were words imputing to a female adultery or fornication, or a want of chastity in any form, actionable, unless special damage ensues and is shown. (*Gascoigne* v. *Ambler*, 2 Ld. Raym. 1004; *Graves* v. *Blanchard*, 2 Salk. 695; 5 Hurl. & N. 534; *Wilby* v. *Elston*, 65 Eng. Com. L. 141; *Brooker* v. *Coffin*, 5 Johns. 188; *Breys* v. *Gillespie*, 2 Johns. 115; *Stout* v. *Wood*, 1 Blackf. 71; *Elliott* v. *Adesbury*, 2 Bibb, 473; *Beach* v. *Rauney*, 2 Hill, 309;

*Woodbury* v. *Thompson*, 3 N. H. 194; 1 Starkie on Slander, 166; Townsend on Slander and Libel, sec. 172.)

Except in London and some other particular places, it is the settled law of England that to charge a woman with incontinence or adultery is not actionable at common law, unless special damage is alleged and proved. So discreditable was the state of the law in that country in making it so difficult for a female to obtain redress for slanders on her moral character, that Lord Brougham was induced to say: "I may lament the unsatisfactory state of our law, according to which the imputation by words however gross, on an occasion however public, upon the chastity of a modest matron or a pure virgin is not actionable without proof that it has actually produced special temporal damage to her; but I am here only to declare the law." (*Lynch* v. *Knight*, 9 H. L. Cas. 592.) The reason of this principle is ascribed to the fact that originally the remedy for common bad language was in the ecclesiastical courts.

Defamation was a common subject for spiritual censures, and Mr. Justice Stephen says: "And the fact that it was so explains the rule of the common law that no action lies for words spoken, unless they impute a crime or relate to a man's profession or trade, or cause special damage." (2 Stephen's History of the Criminal Law of England, 409.)

In *Palmer* v. *Thorpe*, 2 Coke, part 4, p. 20, it is said: "Touching defamations determinable in the ecclesiastical court, it was resolved that such defamations ought to have three incidents: 1. That it concerns matters merely spiritual and determinable in the ecclesiastical court, as for calling him "heretic, schismatic, adulterer, fornicator," etc.

The application of this principle is well illustrated in *Byron* v. *Eames*, 12 Mod. 106, in an action on the case for

saying a woman had a bastard, etc., where it was moved in arrest of judgment that the words are not actionable, because they are of spiritual connusance, and no temporal loss accrues, and the court say: "These words are most scan'dalous of a young woman, so that were it *res nova* perhaps an action would lie; but there are many authorities to the contrary. It is a crime of which the ecclesiastical court has connusance; and it is not reasonable that the party should be liable to defamation and an action too." As a consequence, to avoid punishing a party twice for the same words, the temporal courts held that such words were not actionable *per se.*

Adultery, then, being a spiritual offense, cognizable only in the ecclesiastical courts, and the punishment being confined to the infliction of penance *pro salute animæ,* it resulted that to charge a married woman with adultery was not actionable *per se,* and that no redress could be obtained therefor at common law, without special damage ensues, which must be alleged and proved. And this is the law, with few exceptions, in the several states in which the common law prevails in this country, where such offenses as adultery and fornication have not been made indictable by statute. It must, then, be the law in this state, unless, by force of legislative sanction, the words alleged impute a crime involving moral turpitude.

Tested, therefore, by the common law, the words alleged are not actionable *per se,* and as no special damage is alleged, no case is stated. But as the offense of adultery is now made by our criminal code an indictable felony, a punishable offense involving moral turpitude, the inquiry now is, Do the words spoken and alleged necessarily and by reasonable intendment charge the defendant with the crime of adultery? For if they do, the words are actionable *per se,* and a case is stated, though

no special damage is alleged. By reference to the complaint, it will be seen that the word forming the gist of the action is the word "prostitute" several times repeated and applied to the plaintiff. If the word "prostitute," as thus applied to the plaintiff, implies the crime of adultery, then the word is actionable *per se,* and no special damage need to be shown in order to maintain the action. What, then, are the acts or practices of a female which constitute her a prostitute? Undoubtedly, as ordinarily understood and applied by mankind, they are such acts or practices as consist in common lewdness of the female or in an indiscriminate intercourse with men for hire. A prostitute, therefore, is a female given to promiscuous sexual intercourse for the sake of gain. This is the definition of the books.

Said Appleton, C. J.: "A prostitute is a female given to indiscriminate lewdness for gain; it is the practice of a female offering her body to an indiscriminate intercourse with men." (*State* v. *Stoyall,* 54 Me. 27; *Carpenter* v. *People,* 3 Barb. 603; *Commonwealth* v. *Cook,* 12 Met. 93; *State* v. *Ruble,* 8 Iowa, 453; *Osborn* v. *State,* 52 Ind. 528; *Fanhestock* v. *State,* 102 Ind. 163; *Sheehey* v. *Cokley,* 43 Iowa, 185.)

When, then, the word "prostitute" is applied to a woman, it is meant that she is given to the practice of offering her body to promiscuous intercourse with men for gain. Adultery may be committed by one act of illicit intercourse, but the female to whom the word "prostitute" can be applied has only gained that character by a long continuance in the vice of lewdness. It necessarily denotes one who, if married, has committed numerous adulteries, and, under our code, rendered herself liable to indictment and criminal punishment.

As a married woman, the plaintiff could not be a prostitute without having committed repeated adulteries.

Such is the direct and legal consequences of the illicit acts which make up the character of a prostitute when the woman is married. To say of a married woman that she is a "prostitute" is necessarily to impute to her the guilt of adultery, and as under our law adultery is indictable and punishable, such words charge a crime and are actionable *per se.* Such has been the holding in the several states which have statutes making adultery a punishable offense, and the decisions have gone on the ground that such charge, if true, rendered her liable to punishment under such statutes.

In *Klewin* v. *Bauman,* 53 Wis. 244, it was held that words accusing a married woman of being a prostitute are actionable *per se.* So in *Rancher* v. *Goodrich,* 17 Miss. 82, words accusing a married woman with being a whore were held actionable *per se.* (See also *Sheehcy* v. *Cokley,* 43 Iowa, 185; *Pledger* v. *Hathcock,* 1 Ga. 551.) In short, where adultery or fornication is made indictable by statute, words imputing that a person has been guilty of such an offense are actionable in themselves. (*Stiber* v. *Wynal,* 19 Mo. 513; *Miller* v. *Parrish,* 8 Pick. 385; *Truman* v. *Taylor,* 4 Iowa, 424; *Baudership* v. *Roe,* 23 Pa. St. 82; *Buford* v. *Wible,* 32 Pa. St. 95; *Spencer* v. *McMasters,* 16 Ill. 405; *Moberly* v. *Preston,* 8 Mo. 462; *Nelson* v. *Barnet,* 45 Ind. 163; *Symmonds* v. *Carter,* 32 N. H. 458; *Strobet* v. *Whitney,* 31 Minn. 384; *Klewin* v. *Bauman,* 53 Wis. 244; Odgers on Libel and Slander, 84, and note.) It is no longer the rule that the words alleged to be slanderous are to be construed *in mitiori sensu,* but they are to be taken in their ordinary sense, as they would naturally be understood by those to whom they were addressed.

If the words fairly import the charge of a crime, and would be so understood by mankind, the injury is inflicted on the character of the plaintiff as completely and fully as if the crime had been imputed. (*Woodworth* v. *Mead-*

ows, 5 East, 463; *Walton* v. *Singleton*, 7 Serg. & R. 450; *Demarest* v. *Haring*, 6 Cow. 76; *Duncan* v. *Brown*, 15 B. Mon. 136; *Dixon* v. *Stewart*, 33 Iowa, 125; *Butterfield* v. *Buffon*, 9 N. H. 156; *Hancock* v. *Stephens*, 11 Humph. 507.)

"If you bring my wife into court against *this prostitute* [meaning the plaintiff], she nor none of our family will ever speak to you again"; "My wife would not have *that prostitute* on her land, not for any money"; "All the neighbors are complaining about it; you reside in that neighborhood yourself, and cannot afford to have such people there," etc;—the plain and obvious import of this language was to impute to the plaintiff the guilt of repeated adultery. No one could hear such language uttered without understanding from it that the defendant intended to charge the plaimtiff with promiscuous or illicit intercourse with men for gain. Indeed, according to its natural import, such was the activity and notoriety with which the plaintiff was plying the lewd and indiscriminate practices of the prostitute that "all the neighbors were talking about it." No phraseology could have been used which would have conveyed to the mind more plainly or explicitly her want of chastity, and her guilt of adultery, if the words used were true, as before stated.

Words are actionable in themselves, either at common law or by the statute, where an offense is imputed by them for which the party is liable to indictment and punishment. In this state the breach of chastity, whether by adultery or lewd cohabitation, is punishable by statute (Code, secs. 1858, 1862); and as the words used impute a crime involving moral turpitude, and punishable by the statute, they are actionable *per se*, and special damage need not be alleged to maintain the action.

It may be true, as suggested by counsel, that the case presents some harsh features, but we must apply the law

as we find it, or make a bad precedent, because the case is a hard one. As to the other error alleged upon which the appeal is based, the argument did not indicate much reliance was placed in it, the instructions asked seems inconsistent with the language charged and found to be true. However, if counsel desire it, we will hear further argument upon that point. But as the case now stands, we must affirm the judgment.

### PETITION FOR REHEARING.

[Filed March 14, 1889.]

STRAHAN, J.—A doubt was suggested by the court when this case was first argued, whether or not the words charged in the complaint were actionable *per se,* and counsel on both sides devoted their time to the consideration of that question. A conclusion was reached adverse to the appellant on that question. The opinion failed to notice some instructions asked by the appellant upon the trial in the court below, which were refused, and exceptions duly taken. On his application a rehearing was allowed for the purpose of enabling the court to further examine those exceptions. The instructions which were refused are as follows:—

"5. If you find from the evidence that the slanderous words alleged in plaintiff's complaint to have been spoken by defendant were first spoken in substance by witness George A. Dorris, to the defendant, and that what Sladden said, if he said anything at all, was said only to Dorris, and in repetition only of what Dorris had said, and that Sladden did not claim to know, and did not know, the character or reputation of plaintiff, but that Dorris did claim to know her reputation, then there would be no slander on the part of Sladden.

"6. If you find from the evidence that the person to whom the words in the complaint are alleged to have

been addressed first assailed the character of plaintiff, and pretended to know what her character was, and that whatever words were used by defendant concerning the character of plaintiff were a repetition in substance of what said person had related to defendant concerning the character of plaintiff, and that whatever words were used by defendant concerning the character of plaintiff were used upon the condition that said person was relating the truth concerning the character of said plaintiff, then there was no slander used by this defendant, and your verdict must be for the defendant."

It may be doubted whether or not there was any evidence before the jury that would have justified the giving of these instructions under any view of the law. The defendant himself testified that Mr. Dorris did not say they were prostitutes; the word "prostitute" was not used during the entire conversation. It is true that in another part of his evidence the defendant says that all he said on the occasion in question which referred to the plaintiff was only repetitions of what Mr. Dorris had said to him. But waiving this question, and assuming that there was some evidence before the jury which tended to prove that what the defendant said at the time was a repetition of the slanderous language used by Mr. Dorris, and the question is presented whether or not such repetition was justifiable. In other words, does the fact that it was a repetition entirely exempt and excuse the person who repeats it from all personal responsibility? *Lord Northampton's Case*, 12 Coke, 134, decided in the star-chamber in 1613, seems to give some sanction to the appellant's claim; but that case has not been generally followed, neither in England nor in this country. More than that, the book containing it is one of questionable authority. (Odgers on Libel and Slander, 162, 163.)

But it is believed that the very decided weight of

authority in this country is that any person who pub-
lishes a slander concerning another is responsible for his
act, notwithstanding the words published may be mere
repetitions of what the speaker had heard some other
person say. (*Fowler* v. *Chichester*, 26 Ohio St. 9; *Kennedy*
v. *McLaughlin*, 5 Gray, 3; *Stevens* v. *Hartwell*, 11 Met.
542; *Inmann* v. *Foster*, 8 Wend. 602; *Treat* v. *Browning*, 4
Conn. 408; *Sans* v. *Joerries*, 14 Wis. 722; *State* v. *Butt-
man*, 15 La. Ann. 166; *Evans* v. *Smith*, 5 T. B. Mon. 364;
*Fitzgerald* v. *Stewart*, 53 Pa. St. 343; *Wolcott* v. *Hall*, 6
Mass. 513; *Alderman* v. *French*, 1 Pick. 1; *Bodwell* v.
*Swan*, 3 Pick. 376; *Watson* v. *Buck*, 5 Cow. 499; *Root* v.
*King*, 7 Cow. 613; *Cole* v. *Perry*, 8 Cow. 213; *Mapes* v.
*Weeks*, 4 Wend. 659; *Sheahan* v. *Collins*, 20 Ill. 325; *Dame*
v. *Kennedy*, 21 N. H. 318; *Smith* v. *Buckeker*, 4 Rawle, 294;
*Freeman* v. *Price*, 2 Bailey, 115; Townsend on Slander,
secs. 114, 210, and note 3.)

These authorities conclusively show that one who re-
peats a slander cannot be exonerated on that ground,
and therefore it would have been error for the court to
have given the instructions asked by the defendant.

A number of authorities hold that the fact may be
shown in mitigation of damages. (*Hinkle* v. *Davenport*,
38 Iowa, 355; *Fowler* v. *Gilbert*, 38 Mich. 292; *Hewitt* v.
*Pioneer Press Co.*, 23 Minn. 178; *Parker* v. *McQuam*, 8
B. Mon. 16; *Williams* v. *Greenwade*, 3 Dana, 432.)

But the instructions asked did not present that ques-
tion, and we are therefore precluded from considering it.
In reaching this conclusion, the court has been guided
solely by the law, and here properly our duty ends; but
we cannot forbear saying that there were some facts and
circumstances connected with the case which ought to
have entitled the defendant possibly to a more lenient
consideration at the hands of the jury than he appears
to have received, prominent amongst which is the fact

that he did not seek the interview in which the slander-ous language is alleged to have been used, and the pecu-liar circumstances under which that interview occurred, and which ought somewhat to have mitigated the dam-ages. But we are powerless to interfere only for error in law occurring at the trial, and the circumstances adverted to, being entirely matters of fact, were exclu-sively for the jury, and we cannot interfere.

The judgment of the court must therefore be affirmed.