## LIABILITY OF PRINCIPAL DEBTOR TO ESTATE OF HIS SURETY OF WHICH HE IS EXECUTOR.

Common Pleas Court of Shelby County.

CHARLES L. YAKEY v. ALICE G. STRUNK. *

Decided, 1908.

*Promissory Notes—Maker Becomes Executor of Estate of Surety— Right of Surety to Indemnity is a "Claim"—Nature of Contract Between Principal and Surety—Administrator Must Charge. Himself With Amount of Indebtedness in Excess of his Beneficial Interest in the Estate—As to Conversion of Debt into Assets by Appointment of Debtor as Administrator.*

An insolvent principal maker of a note, who is named as executor in the will of his surety and accepts and qualifies as such, and who pays his own notes as they subsequently fall due as claims against the estate, is properly chargeable, under the provisions of Section 6069, Revised Statutes, as for so much money in his hands.

*J. D. Barnes,* for plaintiff in error.
*Wicoff, Emmons & Needles,* contra.

MATHERS, J.

Charles L. Yakey ·was the principal maker, and his father, Peter S. Yakey, surety on certain notes. The father died testate, before the notes came due, and named Charles his executor, who accepted the trust, and to whom letters testamentary were issued, and who gave bond as such. At the time of his appointment and ever since the executor was and has been insolvent. The notes fell due during his incumbency and were presented to him as executor, as claims against the estate, and were by him

---

* Affirmed by the Circuit Court June 2, 1908, in the following memorandum opinion:

"For the reasons stated in the well considered and elaborate opinion rendered in the above entitled action by the Judge of the Common Pleas, the judgment of that court is affirmed at the costs of the plaintiff in error, and the cause is remanded to carry this judgment into execution. Exceptions for plaintiff in error may be noted in the entry."

allowed and paid out of the funds thereof. In his final account he took credit for these payments, amounting to $2,800.90, but at no time did he charge himself with their amount. On exceptions to his final account, the Probate Court of Shelby County ordered him to charge himself with the amount paid on these claims against the estate as with so much money in his hands. To this order of the probate court he prosecutes error here.

The exact point involved has never been determined in Ohio, so far as the court is aware. Long before the adoption by statute in 1840, of the rule prescribed by Section 6069, our Supreme Court (in *Bigelow* v. *Bigelow,* 4 O., 138) determined that it was then "a well settled principle that if a creditor make his debtor his executor, it is not absolutely an extinguishment of the debt, but it remains as assets in his hands"; but that such action "is, however, a *quasi* release at law, because he can not be sued"; and that a personal action, once suspended, is extinct. *Hall* v. *Pratt,* 5 O., 72, and *Tracy* v. *Card,* 2 O. S., 431, are to the same effect. The reason of the rule is succinctly stated in *Winchop* v. *Bass,* 12 Mass., 199, which case was cited with approval in *Bigelow* v. *Bigelow,* supra. It is that—

"The executor having voluntarily assumed the trust, which prevents any one from suing, and being unable to sue himself, he shall be considered as having paid the debt and as holding the amount in his hands as administrator."

While the correctness of the rule laid down in *Bigelow* v. *Bigelow* is questioned in *Rossman* v. *McFarland,* 9 O. S., 370, yet the Bigelow case has been cited numerous times since as authority for the rule referred to (*McCaughery* v. *Jacoby,* 54 O. S., 498; *James* v. *West,* 67 O. S., 45; *Perkins* v. *Scott,* 9 C. C., 207). In *McCoy* v. *Allen,* 9 C. C., 607, the Bigelow case is repudiated as authority for this rule. But this decision was subsequently reversed, without report, in 57 O. S., 641, and the judgment of the common pleas affirmed, which latter judgment was based on the principle enunciated in the Bigelow case.

Section 6069, originally Section 66 of the act of 1840, enacted long after the decision in the Bigelow case and presumably for the purpose of codifying the law on the subjcet, as announced

by these decisions, by its terms only relates to executors. Yet the rule enunciated in the Bigelow case, which makes administrators equally accountable with executors (the case of an administrator being within the same reason), is applied to administrators (*James* v. *West*, 67 O. S., 45; *Perkins* v. *Scott*, 9 C. C., 207; *Martin* v. *Train*, 6 C. C., 49). Thus the courts, holding the maxim "*expressio unius,*" etc., inapplicable to this Section 6069, have applied the law of these early cases to cases coming within the principle there stated.

In *James* v. *West*, 67 O. S., 45, however, Judge Burket, in delivering the opinion, said:

"While under the rule of decision of this court * * * debts owing by an administrator to the estate are to be regarded and treated as assets in his hands, the rule is so far unsatisfactory that it should not be extended, but should be confined to cases in which the administrator owes the debt individually and unconditionally."

And in *Shields* v. *Odell*, 27 O. S., 398, it was held that the principle under consideration "does not apply to one who is only conditionally liable to the estate." In the opinion in the latter case, Judge Wright, speaking of the Bigelow case, said:

"The first sentence of the opinion is, 'the first question made is whether the appointment of a debtor administrator extinguishes the debt, and *eo instanti,* turns it into assets.' This shows that it must have been a debt existing during the lifetime of the intestate, for it is a debtor who is appointed administrator. * * * Of course then that debt must have existed during the life time of the testator. 2 Williams, Executors, 1123."

In these and in all the other cases the court has examined the obligation on the part of the executor or administrator is spoken of as a debt, an accrued claim. But the words of the statute do not limit it to such an obligation. Instead of speaking of it as a debt the language is "any just claim." And then the statute proceeds to require such a claim to be inventoried and "at the time such debt or demand becomes due" the executor shall be liable for it as for so much money in his hands. Manifestly by the word claim the statute contemplates something besides an

actual accrued indebtedness in favor of the testator. *Martin* v. *Train*, 6 C. C., 49.

Did the relation of surety on the notes of his insolvent executor give the testator any "just claim" against the former?

What is a claim? "In a judicial sense it is a demand of some matter as of right made by one person upon another, to do or to forbear to do some act or thing as a matter of duty." Story, J., in *Prigg* v. *Commonwealth*, 16 Peters, 615 (41 U. S.).

A demand, according to Anderson's Law Dictionary, is "an account upon which money, or other thing is, or is claimed to be due," but it is further defined as "a legal obligation." It is said to be the most comprehensive word in law, except the word *claim*. If "claim" be any more comprehensive than "demand" it may mean something more than is implied by the terms "legal obligation"—something more than "demand," as just defined. In the case in 16 Peters—which may also be found in 41 U. S.— it was applied to the right to have again a fugitive slave and referred to the application of the owner for such slave. In *Fordyce* v. *Godman*, 20 O. S., 14, it was said: "In its ordinary sense, a claim imports the assertion, demand or challenge of something as a right; or it means the thing thus demanded or challenged." And later on: "By the subject-matter of a claim, we understand the facts or circumstances out of which the claim arises."

"When a demand is admitted it is not a mere claim, but a debt. It no longer rests in mere clamor or petition, but is something done upon which an action may be maintained." *Dowell* v. *Cardwell*, 4 Sawyer's U. S. Circuit and Dist. Ct. Reports, 288.

So the word "claim" being used in this statute, being the most comprehensive word the Legislature could use, must be intended to comprehend, as the subject-matter, all facts and circumstances out of which the claim might arise, which later, when admitted or determined, would become a debt or demand.

It is true that the relation between principal and surety does not entitle the former to call upon the latter to refund until he has paid the debt or some part of it—until his right to indemnity passes from a mere claim into a demand.

That a surety has some claim upon or against his principal, even without paying the debt, was decided, in 1824, in *Stump* v. *Rogers,* 1 O., 533. In that case the court held that a surety might have the aid of a court of chancery to subject the estate of the principal to the payment of the debt without first advancing or paying the money, as he must do before he could sue in an action at law. In *McConnell v. Scott,* 15 Ohio, 403, where the same thing was held, the court say:

"What are the obligations of the principal debtor to his surety? Certainly to save him harmless from every injury which may result from such relation, and a promise is implied to this effect, as valid as if made in express terms, between the parties." Citing *Ward* v. *Henry,* 5 Conn., 596.

The insolvency of the principal debtor was an element of this case, but in both the debt had become due. This was also true in *Barber* v. *Bank,* 45 O. S., 138, where these two cases are approved.

It is true that these are equitable remedies, and of course predicated on equitable rights; and it may be said that the rule contended for by the defendant in error is strictly a legal one and that unless the facts bring the executor strictly within this legal rule, it can not be extended, especially as the statutory rule proceeds on a legal fiction in order to do justice; which fiction will not be indulged where injustice will result. But the rule of the statute was originally an equitable one—*Perkins* v. *Scott,* 9 C. C., 209, designed to prevent a result which, if the common law operated, would be unjust.

When the nature of the contract between principal and surety is analysed, it will appear that there is something in the nature of a claim in favor of the surety. In 27 Am. & Eng. Ency. Law, 2d Ed., 468, it is laid down that the implied contract of indemnity between principal and surety arises and takes effect from the time when the surety becomes bound and that *the surety becomes a creditor of his principal from that time.* Several authorities are cited in note 8, and among them *Washburn* v. *Blundel,* 22 Southern Rep., 946, which is very full and pertinent. A quotation there made from the opinion of

Chancellor Cooper, in 2 Tenn. Ch., 555, 556, is quite apposite to the case at bar. It is:

"The obligation created by the act of becoming surety subsists from the moment it is entered into and the fact that the statute of limitations only begins to run between the parties from the payment of the security debt, no more changes its character or the date of its commencement, than the fact that the statute does not begin against a creditor who takes a note of the testator upon long time, till the debt falls due.  *  *  * And, obviously, it is a mere play upon words to say that such a liability is not an obligation created in the lifetime of the principal, since it originates in the execution of an instrument by the principal and surety, and flows from a principle of equity so universally acknowledged, that, in the language of Lord Eldon, those who act under it 'may properly be said to act under the head of contract.'"

And the language of the court in *Rice* v. *Southgate*, 16 Gray, 142, is also quite clear. They say:

"Upon well settled principles, it is clear that the contract of a principal with his surety to indemnify him for any payment which the latter may make to the creditor in consequence of the liability assumed, takes effect from the time when the surety becomes responsible for the debt of the principal. It is then that the law raises the implied contract or promise of indemnity. No new contract is made when the money is paid by the surety, but the payment relates back to the time when the contract was entered into by which the liability to pay was incurred. The payment only fixes the amount of damages for which the principal is liable under his original agreement to indemnify the surety."

So if the contract to indemnify arises and takes effect at the time the surety becomes bound, the mere fact that there is nothing due on the contract until the surety pays the debt does not make the obligation of the contract any the less a *claim*. And especially is this true where the principal is insolvent and there is no reasonable probability of his paying the debt.

It is contended that the principal, however, is only contingently liable to his surety and that, as the debt was not paid in the lifetime of the testator surety, no claim against the executor

was in existence at the time he accepted the trust and consequently there was no debt to convert into assets when the appointment was made. *Shields* v. *Odell*, 27 O. S., 398, is cited as authority for this contention.

If, however, the doctrine laid down in 27 Am. & Eng. Ency. L., *ante,* and especially that of the opinion of Chancellor Cooper, in 2 Tenn. Ch., 555, be correct, the claim *was* in existence at the time the executor accepted the trust. So he was within the reason of the rule that the claim must have existed when he was appointed and accepted the trust, "in order that he may have knowledge of the consequence or legal effect of changing the nature of his liability," as was said in *Martin* v. *Train,* 6 C. C., 53. Section 6069 does not *eo instanti,* the appointment of the testator, transmute a claim against him into money. The claim is only to be "included among the credits and effects of the deceased in the inventory, and the executor shall be liable for the same as for so much money in his hands at the time such debt or demand becomes due."

While it is true, the claim in the case at bar would never have ripened into a debt or demand had the estate not paid the notes, and hence the testator surety may be said to have been, at the time of his appointment, only contingently liable to the estate; yet it may be observed, in passing, that contingent liabilities are as much within the letter of Section 6069 as any other and it is only such as fall within the reason of the exception, as defined in the case of *Shields* v. *Odell,* that the statute can not operate upon. And the one under consideration is not within that reason.

In *Shields* v. *Odell,* the court distinctly bases its decision on the principle that the debt of the administrator, if debt it was, was not originally his own debt (p. 402), and that he was not the sole debtor or obligor who could be sued (p. 405). Hence the case was not within the reason of the rule that makes a debt from a trustee to the trust fund money in his hands because he is both debtor and creditor and can not sue himself. In the opinion, at p. 405, it is said:

"When Moore became administrator of Armstrong, although the right of action against him on his bond might be suspended, still he could sue his co-obligor," etc.

The same principle determined the question in *Rossman* v. *McFarland*, 9 O. S., 370, where it was held that "the case of *Bigelow* v. *Bigelow*, 4 O., 138, does not apply to cases of joint and several notes where only one of the makers becomes trustee to a payee;" that while the trustee—who was one of two joint and several makers—could not sue himself, yet he could sue the other maker of the note; and that there was no such suspension of a right of action upon the note as would authorize the court to hold the note assets in the trustees' hands.

In the case at bar no such condition exists as will present a suspension of the right of action. The claim of the testator against the executor existed in the lifetime of the former, who, by reason of the contract, was even then a creditor of the executor (27 Am. & Eng. Ency. Law, *ante*); when the notes fell due and were paid, the amount of the claim was fixed, and it became a demand or debt and at that time transmuted into money in the executor's hands, because he, being the one who was to pay and the one to receive, the right of action was suspended and became extinct (*Bigelow* v. *Bigelow*, 4 O., 138, and cases cited). Perhaps it would be more accurate to say the right of action was extinguished because the debt is considered as paid; hence there could be no right of action for there is nothing to rest it on.

Miller v. Donaldson, 17 O., 264, may be regarded as shaking the rule that a personal action once suspended is extinct. But if that case is not an exception to the rule, it certainly does not have the effect mentioned. In that case it was held that, "a mortgagee, by making his debtor his executor, does not thereby extinguish the mortgage." It was contended that, as the mortgage was only security for the debt, when the latter was extinguished by the debtor's becoming executor the security was discharged. The court do not say the action is not suspended, in order to sustain the mortgage, but do say, p. 266, "Nor does it follow, because an action at law will not lie for the

debt, that proceedings in chancery can not be maintained to subject the land according to the terms of the mortgage." Further it might be said that the mortgage was given to secure the payment of the debt by the mortgagee, and that the sureties on the mortgagee's bond as executor would be subrogated to the benefit of the security and might apply, under the holdings in *Stump* v. *Rogers*, and *McConnell* v. *Scott*, *ante*, to subject the mortgage to the payment of the debt, if as a matter of fact it was not paid, as it was not, even before paying the amount themselves; though the court do not put it on this ground but on the ground that the transmutation of a debt into money, when the debtor becomes executor of his creditor's estate, is a legal fiction, designed to promote justice and will not be extended to cases where the opposite will result. The case therefore merely holds that the rule that the testator's debt becomes money in his hands shall not operate to extinguish the security given by the executor to his testator to secure that debt, which, at most, is a limitation of the rule in favor of the trust, and it might be added in favor of the executor's bondsmen also.

In the case at bar there is no question of preserving security.

It is urged, however, that the fiction referred to (and it would be a pure fiction in this case, for the testator is insolvent and has been from the death of the testator, and hence, as a matter of fact, has *not* paid his indebtedness to the estate and has no funds wherewith to do so) ought not to be applied, as it would result in his bondsmen having to pay the amount, which would be a great injustice to them; that they did not undertake to guaranty the payment of the bad debts of the estate nor to pay the executor's debts.

But the same point was made in *McCaughery* v. *Jacoby*, 54 O. S., 487, in circumstances which appeal far more potently to one's sense of fairness than those here, and the Supreme Court held that the fiction must be applied, nevertheless. In that case the bondsmen were induced to become such by the fraud of the executor, who represented that there would be practically no estate to administer, and concealed the fact that he owed the testator, and said one other of the bondsmen was fully

· solvent and worth all the value of the estate, when in fact he was insolvent. Those entitled to distribution, being innocent of any fraud, the bondsmen were held liable for the amount of the testator's indebtedness, as for so much money in his hands though he was, at all times, wholly insolvent.

In the case at bar the testator is and was wholly insolvent, but that makes no difference (*McCaughery* v. *Jacoby, ante; Perkins* v. *Scott,* 9 C. C., 207; *Allen* v. *McCoy,* 57 O. S., 641, reversing *McCoy* v. *Allen,* 9 C. C., 607). Possibly the sureties on his bond have some indemnity. It certainly would be the part of wisdom for sureties on all such bonds to require indemnity and secure it before undertaking in effect to guaranty the beneficiaries of an estate against loss on account of a claim the estate may have against an insolvent executor or administrator. But if they have no indemnity, and should ultimately have to make good the amount of his claim, they would be subrogated to the claims against their principal and might sue him and would doubtless be more likely to secure reimbursement than any one else, such as an administrator *de bonis non,* for instance. Indeed, it is doubtful if any one else could sue the testator on this liability, for doubtless, in an action to recover the debt, which admittedly he owes this estate, he would plead the suspension or extinguishment of the cause of action by reason of his having been executor. Further than this, if it is only when a claim falls due that it is to be considered as money in the executor's hands—as Section 6069 expressly provides—the plaintiff in error might have resigned before these notes came due and thus have prevented the operation of that statute. By remaining in office until the statute operated be put the claim in such shape that it could not be sold as a desperate one (*Cheney* v. *Powell,* 20 C. C., 399). Again the sureties might, had they been reasonably prudent, have ascertained whether the testator was insolvent, by reason whereof they might become liable for any debt he owed his testator; as also, whether he was in fact, so indebted; and if satisfied he was, have applied under Section 6204 to be released as sureties, and doubtless the presentation to any fair minded probate court of these two conditions would

move such a court to require a new bond and release such sureties; or they might have proceeded under Section 6017 to procure his removal because there were "unsettled claims or .demands existing between him and the estate, which  *  *  * may be the subject of controversy or litigation between him and the estate, or persons interested therein."

The surety on an executor's bond undertakes to secure the faithful administration of the estate, and it is his duty, as well as to his interest, to know about the estate and how it is being administered. If his principal so conducted his trust as to prejudice the beneficiaries, the surety and not the beneficiaries ought to suffer. Indeed, that is just what the sureties contracted to do. And if they negligently or willfully permitted him to occupy such relations to the estate as that the law destroyed a right of action in favor of the estate against him, and required that he be charged with such money in its stead, then they and not the beneficiaries should suffer.

As has been said before a cause of action against their principal would certainly subsist in their favor, with subrogation to any securities and rights of the estate, while the beneficiaries would be remediless; for neither they nor an administrator *de bonis non* could sue, as the right of action was extinguished when the testator owed the debt to the estate (*Martin* v. *Train*, 6 C. C., 49). So while it is true that the principle involved is a fiction, yet not to indulge in it would work a greater injustice than to do so.

In *Lambright* v. *Lambright*, 74 O. S., 198, the facts were in all respects similar to those in the case at bar, except that the testator was a beneficiary of the estate to an amount greater than his indebtedness; whereas, here, his indebtedness exceeds his beneficial interest. To the extent that the order of the court below comprehends charging the plaintiff in error with an amount equal to his beneficial interest in the estate, the order is fully supported by the Lambright case, *supra*. It was in that case held that "a debt due from an heir, legatee, or creditor, to an estate, is an asset of such estate, and where the distributive portion of such heir or legatee, or the claim of such

creditor, is equal to or greater than his debt to the estate, the administrator or executor should charge himself with and account for the full amount of the same.''

No good reason suggests itself against a *pro tanto* compensation of claims, where the debt exceeds the beneficial interest.

The Lambright case does not determine whether, in the event the indebtedness exceeds the beneficial interest, the excess is to be considered as money in the testator's hands in such circumstances as were there involved and are here involved. This court, for the reasons heretofore given, is of the opinion that the rule requires the plaintiff in error to charge himself with such excess, and, therefore, the judgment and order of the probate court will be affirmed.