## PERMITTING PROSTITUTES TO RESORT IN A DRAM SHOP.

Common Pleas Court of Franklin County.

### B. BURNS v. CITY OF COLUMBUS.

Decided, November 25, 1912.

*Criminal Law—Ordinance Prohibiting Use of Dram Shop as a Place of Resort for Prostitutes—Prosecution Thereunder—Knowledge on Part of the Keeper as to Character of Habitues—Degree of Proof Required to Establish that Certain Women Are Common Prostitutes —Character Must Be Distinguished from Reputation.*

1. In order to establish guilt on the part of the keeper of a dram shop, under an ordinance making it a punishable offense to "permit such place to be used, frequented or resorted to by [among others] any common prostitute," it must be made to appear from the evidence that the persons named in the affidavit were common prostitutes, and that the defendant had knowledge that persons so using,

frequenting and resorting to his place were of the character charged; and in the trial of one so accused it is error to refuse to admit evidence that the instructions of the defendant to his employes were to exclude objectionable characters.

2. A common prostitute is a woman who habitually engages in acts of prostitution, and either habitually solicits men to engage in such acts with her, or habitually resides in a place kept for that purpose, or who holds herself out as one who is willing and anxious to engage in acts of promiscuous prostitution.

3. The evidence required to place a woman within the designation of a common prostitute relates less to individual acts than to general conduct and behavior characteristic of one plying that avocation.

4. Under the Columbus ordinance evidence relating to women of questionable behavior must go to the question of character rather than reputation; and the practice of seeking to establish lewdness by the testimony of police officers as to reputation, without further evidence as to facts and circumstances upon which such reputation is based, is to be severely condemned.

*C. D. Saviers,* for plaintiff in error.

*H. N. Schlessinger,* contra.

KINKEAD, J.

This is a proceeding in error wherein plaintiff in error seeks to reverse a conviction in police court under Section 328 of the codified ordinances, which is as follows:

"Any keeper of a dram shop, beer house, or other place of public resort in this city, *who shall permit such place to be used, frequented or resorted to* by any riotous, noisy or disorderly persons, by any gambler or *common prostitute,* or permit any breach of the peace or disturbance of public order and decorum, by noisy, riotous and disorderly conduct on the premises, *when it was in his power to prevent it,* or who who shall sell any intoxicating drinks to any person already intoxicated, shall be deemed guilty of a misdemeanor, and, upon conviction thereof, be fined not less than $25 nor more than $250."

The affidavit filed against the plaintiff below charges:

"That on or about the 16th day of July, 1912, and on divers other times and occasions between that and the 28th day of August, 1912, at the City of Columbus, County of Franklin and State of Ohio, being then and there the keeper of a certain beer

house and wine room, a place of public resort in said city of Columbus, Ohio, No. 22 West State street in said city, did unlawfully *permit* such place to be *used, frequented,* and *resorted* to, during said time by certain common prostitutes, to-wit'' (naming them).

The evidence shows that Burns is the proprietor of the American House, and that he runs a saloon in connection therewith. Adjacant to the bar room and upstairs is a large room capable of seating one hundred and more persons where liquors and cold and hot lunches are served to the public.

In ''polite language'' counsel say, the room would be termed a grill room, but described in police circle language it is a wine room, or a beer house.

The question presented is whether Burns may be convicted of being a keeper of a beer house and wine room where he *permitted* such place to be used, frequented and resorted to by certain common prostitutes.

The claims urged on behalf of plaintiff in error are the following:

1.  That the language of the ordinance ''*who shall permit* such place to be *used,* frequented or resorted to by common prostitutes,'' contemplates or means that to find one guilty of such offense it must appear that the accused had knowledge of the *character* of the persons frequenting or resorting to such place, and assented thereto.

2.  That ''*permit*'' as used in the ordinance donotes a decided or express assent or license, that common prostitutes, known by the accused to be such, are permitted to *use, frequent* or *resort* to his dram shop, beer house, or other place, etc.

3.  Another question arises (which counsel do not present), whether it must be made to appear by the evidence that the accused had *power to prevent* common prostitutes from frequenting or resorting to his place.

4.  It is claimed that the accused can not be convicted of violating the ordinance by evidence that the persons who used, frequented or resorted to the place are common prostitutes by mere reputation.

5.   That *used* contemplates an accustomed or habitual use.

6.   That frequently means habitually.

7.   That resorting to such place means habitually frequenting the place.

Counsel for defendant in error claim that all questions in this case have been determined by the circuit court in the Daniels case, No. 2970.

In the latter case the same ordinance was involved.

The common Pleas court had determined in that case that a conviction could not be supported in respect to common prostitutes solely by evidence of their general reputation. The circuit court reversed because the distinction between character and reputation was overlooked, and because there was testimony of police officers specifically directed to the character of the women frequenting the place, and also as to specific conduct in the wine room and public bar room as to the loitering and indiscriminate association, from which the reasonable inference might be drawn as to their character, such testimony being uncontradicted.

It is claimed that there is some such testimony in this record attention being called to page 30. We do not think so.

There is not any testimony as to the loitering and indiscriminate association, so that in some respects we do not feel entirely bound by the decision in the Daniels case. We have examined the question and the authorities and while perhaps we may express an opinion slightly different from that in the Daniels case, still we feel at liberty to do so because of the difference of the facts in the two cases.

The conviction in this case, if sustained, must rest on proof alone of the reputation of the persons as prostitutes, and want of knowledge on the part of the keeper of their character.

We coincide in the view expressed in the Daniels case as to a keeper of a dram shop being chargeable with certain natural inferences from conduct, but would state the rule more broadly.

We first consider the claim of counsel that the ordinance is invalid, if it shall be so construed as to make a conviction possible thereunder by proof of frequenting the place by evidence

of mere reputations of the persons claimed to be common prostitutes, who are said to have such reputation.

Counsel contended that "the better practice is that a conviction can be based only on the proof of specific acts and that notoriety can not present a presumption of guilt."

The court in that case took occasion to express its opinion on the propriety of conviction of a keeper of such places on testimony of the reputation of the frequenters of the place.

"It is," say the court, "in our opinion competent for the Legislature or common counsel in prescribing police regulations of public resorts to base the regulation upon the common character or general reputation of the frequenter.

"The term common prostitute as employed in this ordinance, we think, applies to one, not only guilty of prostitution, but who plies her trade or vocation openly and notoriously, and is therefore, a public character. In this view, we think that common report and general reputation is competent evidence to prove character of the frequenter of the place."

In respect to the opinion thus expressed, which was evidently not what the decision was based on, it may be said that the ordinance in question does not specifically provide for conviction on "common character or general reputation of the frequenter."

Keepers of objectionable places have been convicted on this class of testimony, as evidenced by the authorities (*Wigmore on Ev.*, 1620, p. 1969, note 7). But the court in the Daniels case specially held otherwise that he could not be convicted that is it states that:

"It is not sufficient to prove by rumor or general reputation that Daniels kept the place or that Daniels permitted the characters named to frequent the place so kept. The evidence as to acts by Daniels must be specific."

The court in the Daniels case in expressing its view as to the meaning of the word "common prostitute" has given the view generally followed, though perhaps not so fully stated.

It is held by some authority that "a municipal corporation can not declare one whose known character is that of a prostitute

guilty of an offense.'' *Paralee* v. *Camden*, 49 Ark., 165; *People* v. *Pratt*, 26 Hun., 300; *Delano* v. *State*, 66 Ind., 348; *2 McClain Cr. Law*, par. 1133; *28 Cyc.*, 710; *Freund on Police Power*, par. 96. See also opinion in *Hammond* v. *State*, 78 O. S., 15.

In *Grand Rapids* v. *Newton*, — Mich., — (35 L. R. A., 226), the court stated that an ordinance limited to places of resort where prostitutes may be presumed to go for immoral purposes, like a liquor saloon, it may be competent to exclude all having the reputation of being prostitutes, or it may be competent to require in such case that the proprietor see to it, at his peril, that none having that reputation in fact congregate at or visit his place of business.   *   *   *   The power to exercise stringent regulation of the liquor traffic has been frequently recognized, and arises out of the necessities of the case.   The courts recognize the fact that such places furnish facilities for unlawful conduct, and hence that regulation of such business is proper, and this court would hesitate to pronounce unreasonable stringent regulations based upon the necessity of control arising out of this condition.''

This was *dictum*, but we adopt the reasoning which is sound and applicable in a case when there is proof of circumstances which justify its applicability, although we do not find any such evidence in this case, and hence our expression is *dictum*.

We are not ready to hold that visitation by females of wine rooms is to be considered *per se* evidence warranting the inference that they are common prostitutes.   There should, according to the decisions, be evidence of conduct and actions, from which inferences may be drawn.

We think a definition may be framed of a common prostitute by a consideration of all the authorities which ought to apply to the ordinance in question, as well as to the one prescribing the misdemeanor of being a common prostitute.

A common prostitute is one who is habitually engaged in acts of prostitution and who either habitually solicits persons to engage in acts of prostitution, or who habitually resides in a place kept for that purpose, or which is known to be kept for that purpose; or it is one who holds herself out as a person who

is anxious and willing to engage in acts of prostitution either by her habitude in a known place of prostitution, or by acts, conduct or signs, whose meaning men of like disposition instinctively know or understand, and who frequents places where the natural and apparent purpose and tendency (considering the character and reputation thereof as where men and women of a class habitually frequent) is to afford opportunity to such class of women to ply their trade or vocation openly and notoriously thereby becoming public characters.

It will never be required that testimony of specific acts of prostitution shall be produced, other than that showing acts, place and opportunity where the natural inference and deduction is that an act of prostitution is committed.

The spirit and intent of the law concerning this matter, so far as it is regulated by statute or otherwise, is to regulate the conduct of that class of persons, who in some way (commonly understood by the classes interested) prostitute themselves by acts of illicit sexual intercourse with men generally as a business or means of livelihood. This may be manifested by habitual presence on the street by a personal appearance which is noticeable and generally understood, or by habitual appearance at wine parlors, habitually frequented and resorted to by both sexes under circumstances and conditions and attended by such conduct as to reasonably cause those familiar with such matters to believe them to be common prostitutes, and to make it clear by casual observation that such persons are prostitutes and that such is their occupation.

It is held in *State* v. *Rice,* 56 Iowa, 431, that:

"Whether or not a woman is a prostitute is a question of fact, which does not alone depend on the number of persons with whom she has had illicit intercourse, but in determining which a jury may consider her general conduct and other circumstances tending to show whether or not she holds herself out to the public."

A prostitute is a female given to promiscuous sexual intercourse with men for gain, the practice of offering her body to an indiscriminate intercourse with men, the term being applied

only to the female who has gained that character by a long continuance in the vice of lewdness.   *Davis* v. *Sladden,* 17 Ore., 259; *State* v. *Stoyall,* 54 Me., 27; *Carpenter* v. *People,* 3 Barb., 453; *Fahnestock* v. *State,* 102 Ind., 163; *Sheehey* v. *Cokley,* 43 Iowa, 185.

If a woman invites or solicits indiscriminate sexual intercourse by word or act or by any device, she is a prostitute.  Her avocation may be known from the manner in which she plies it, and not from pecuniary charge and compensation.  *State* v. *Clark,* 78 Iowa, 492.

Such being the light in which the term common prostitute is used, it is readily to be seen that it is not alone the individual acts, or not so much the individual act that is to be considered as it is the general conduct, and other circumstances which tend to show that a female holds herself out to men in general, her avocation being known by the manner in which she plies it.

Considering the ordinance in the light of such conception, it may be said that the evil intended to be reached is that women who are reputed to be common prostitutes, or who are known to be living at a place or in a locality known to be occupied by reputed common prostitutes, or whose general conduct is such as to show that they are holding themselves out to men in general as seeking or soliciting opportunities for promiscuous prostitution, shall not be permitted to use, frequent or resort to the places mentioned.

This is the construction which is placed upon the ordinance, aided by expressions of judicial precedent and by matters of common knowledge.

The purpose of the regulation is to prevent that class of females using, frequenting and resorting to the dram shop or beer house for the purpose of plying their avocation.

To accomplish the objects of the ordinance the specific instances of illicit intercourse are not greater, if as great importance as the general conduct and acts which are clearly indicative of being a common prostitute, as well as the reputation of being such.

The decision in the Daniels case, as before stated, specifically held that "it is * * * competent for the Legislature or common council in prescribing police regulations of public resorts to base the regulation upon the common character or general reputation of the frequenter."

But the ordinance makes no such regulation; it is a question of construction or rather of evidence which the court must decide upon the record of the particular case.

It is for the court to determine in addition to what constitutes a common prostitute, the further rule of evidence by which the fact may be shown.

We have stated the rule by which to determine what constitutes a common prostitute; and this suggests the rule of evidence.

We hold that to make out a case of using, frequenting and resorting to a beer house by a common prostitute, such acts or circumstances may be shown as will justify the reasonable inference of acts of illicit intercourse, and general conduct and circumstances which tend to show that a female holds herself out to men in general for purposes of prostitution.

Or such general conduct and general reputation of being a common prostitute together may be sufficient.

"So far as the offense involved in the issue the kind of persons resorting to it, it is possible to maintain that either their reputation or their actual character is the fact in issue; if the former, then those persons' reputation is, of course, admissible as being in issue; if the latter, then their reputation is admissible under the present exception as evidence of their personal moral character." *Wigmore on Ev.*, Section 1620.

"Having regard to the circumstances from which such reputation arises, and the difficulty of obtaining other evidence in the ordinary way from unimpeachable witnesses, it seems unquestionable that reputation should be admitted as trustworthy and necessary evidence." *Wigmore on Ev.*, Section 1620.

The opinion is expressed that testimony of mere reputation unaccompanied by either of the above classes of evidence is not sufficient to warrant a conviction under the present ordinance.

Practically the same tests for establishing the fact of one's being a common prostitute are applicable under both ordinances, the one aimed against the female as well as the one relating to the keeper of the dram shop.  But the court in the Daniels case thought the principle in 78 O. S., 15, does not apply to the case against the keeper so far as legislation went to provide for his conviction on the general reputation of the frequenter.  But we have no such situation here.

The constitutionality of the ordinance was raised in the Daniels case and must be assumed to have been considered and decided.

The remaining question to be considered is whether knowledge of the character of the persons who frequent such places as being common prostitutes must be known by the keeper thereof.

It would seem that there is no room for contention on this point.

The authorities cited by counsel for plaintiff in error are conclusive that the language "who shall *permit* such place to be used * * * common prostitutes, * * * when it was in his power to prevent it," requires that it must be shown that the keeper had knowledge of the character of such persons and consented to their presence there.

If the keeper does not know that a common prostitute is on his place, then he is not guilty of *permitting* such person to use, frequent or resort to his place.  *2 Woolen & Th. on Intox, Liq.,* Section 1100.

*Permit* means to tolerate, to allow by express consent; denotes a decided assent.   30 *Cyc.*, p. 1461; *State* v. *Robinson*, 55 Minn., 169, 171; *Chicago* v. *Stearns*, 105 Ill., 554; *Words & Phrases*, p. 5315; *Board* v. *Board*, 3 Ohio Dec., 70.

*Use* means habitual use.   *Begg* v. *City*, 10 C.C., 199 (39 Cyc., 856).

*Frequent*, means to visit often, to resort to habitually.   20 *Cyc.*, 839.

*Resort*, means the habitual frequenting of a place.   34 *Cyc.*, 1669.

The brief of counsel in an encyclopedia of authorities in support of these views of the terms mentioned.

In considering the record in the light of the rules heretofore expressed, the first question is whether it was made to appear by the evidence that Burns had knowledge of the fact that the persons named in the affidavit were common prostitutes.

The deduction is reasonably evident that there was no evidence charging defendant with knowledge of the character of the persons, either directly or indirectly; that is there was no proof which would be sufficient to charge defendant with knowledge by inference. The case was not tried on any such theory. It has been customary to call police officers to testify as to the reputation of women as being common prostitutes, without further evidence as to facts or circumstances. This practice we condemn, and have undertaken to lay down the rule which we think the law requires should be followed.

We find it to have been error to exclude testimony of directions given by Burns to his employes to exclude objectionable characters.

We have acted on the theory that as the constitutionality of the ordinance was raised in the Daniels case its constitutionality was assumed by the circuit court.

We do not merely assume its validity, but expressly hold, construed as it has been in this decision, that the ordinance is valid.

But for the errors mentioned the decision is that the judgment is reversed.