Smith v. Silence.

LAW SCHOOL LIBRARY.

## SMITH v. SILENCE.

A demurrer is waived, by the defendant answering the petition.

To call a woman a "whore," is actionable of itself, without proof of special damage.

Where a wife is deserted by the husband, and she continues to live apart from him, and is dependent upon herself for a support, she may sue and be sued as a *feme sole*.

Where in an action for slander, it appeared that the plaintiff was a married woman; that about fifteen years before, the husband of plaintiff, left her and went to New Orleans to reside; that he wrote to his wife for two years and a half after he left, about which time, she was induced to believe that he had died in New Orleans, of yellow fever; that she remained in this belief until the autumn of 1854, when the husband wrote to his father, in New York, from Havana, in Cuba, inquiring about his family; that he also wrote to his wife, and requested her to come to Havana, and live with him; that in March, 1855, plaintiff went to Havana, and went to the house of her husband; that from what she saw and heard of him, when she ar-

Smith v. Silence.

rived, she refused to live with him, and returned to the United States, as soon as she was able to leave the island of Cuba; and that the husband had accumulated property in Havana; *Held*, That the desertion and continued abandonment of the wife by her husband, was sufficient authority for her to sue in her own name; and that she had such right to sue, without first obtaining authority from the District Court, under chapter 84 of the Code.

The remedy provided by sections 1456, 1457 and 1458 of the Code, in relation to married women abandoned by their husbands, is cumulative, and is more particularly applicable to cases, where the abandonment is not such as to imply a total renunciation of marital rights, or where there appears to be no intention of leaving the wife free to act as a *feme sole*.

*Appeal from the Dubuque District Court.*

THIS was an action to recover damages for slanderous words spoken of and concerning the plaintiff by the defendants, in calling her a whore. The petition alleges no special damages to plaintiff from the speaking of the words. There was a demurrer to the petition, which was overruled by the court. The defendants then answered, denying the allegations of petition. It appeared, during the progress of the trial, that plaintiff was a married woman, and that her husband was still living. Defendants moved the court to direct a nonsuit, for that reason; it being admitted, as stated in the record, that plaintiff had not applied to the District Court, and obtained permission to sue alone, as provided for by the Code, § 1456, &c. The motion was overruled. The court charged the jury, that to call a woman a "whore," is actionable of itself, without any allegation of special damage—to all of which defendants excepted. The jury found a verdict for plaintiff for $125, for which judgment was rendered. Defendants appeal.

*Tripp & Pollock* and *Wiltse & Blatchly*, for the appellants.

*Smith, McKinlay & Poor*, for the appellee.

STOCKTON, J.—The demurrer was waived by defendant's answer to the petition. This is of the less consequence, in

this case, as the same question is raised on the instruction given by the court to the jury, "that to call a woman a 'whore,' is actionable of itself, without proof of special damage." We think there was no error in this instruction. The question has been settled by the Supreme Court of this state, first, in the case of *Cox et ux.* v. *Bunker et ux.*, Morris, 269, and that decision has been subsequently confirmed. See *Reynolds* v. *Daley*, Supreme Court, Iowa (not published); *Abrams* v. *Foshee and wife*, 3 Iowa, 274. We are aware that the law is otherwise, in some of the states. In New York, the common law rule is retained, and the words are actionable, only "where the charge, if true, would subject the party charged, to an indictment for a crime involving moral turpitude, or subject him to an infamous punishment." 3 Hill, 22. In other states, the rule has been relaxed. In some, by statute, as in North Carolina, South Carolina, Indiana, Illinois, Kentucky, and Alabama. 1 Littell, 644; Iredell, 136; 2 Devereux, 115; 7 Blackford, 58; 2 Gilman, 34; 2 Littell, 153; 3 Dana, 453; 4 Ala. 44. In others, by the progress of the same enlightened sentiment, acting through their courts of highest resort. 8 Pickering, 385; 3 N. H. 194; 2 Conn. 707; Wright's (Ohio) Rep. 40, 121; 3 Serg. & R. 261; 10 Watts, 245.

The only other question raised, is upon the refusal of the court to order a nonsuit, on motion of defendants, upon the ground that the plaintiff was a married woman, and had not obtained authority from the District Court, to sue in her own name. The testimony was, that about fifteen years before, James W. Smith, the husband of plaintiff, left her and went to New Orleans to reside; that he wrote to his wife for two years and a half after he left, about which time she was induced to believe, that he had died in New Orleans, of yellow fever; that she remained in this belief until the autumn of 1854, when he wrote to his father in New York, from Havana, in Cuba, inquiring about his family; that he also wrote to his wife, the plaintiff, and requested her to come to Havana, and live with him; that in March, 1855, plaintiff went to Havana, and went to the house of said

Smith; that from what she saw and heard of him, when she arrived, she refused to live with him, and returned to the States as soon as she was able to get away from the island; and that Smith had accumulated property at Havana; but it does not appear that he had ever made any provision for the support of his family. Without determining whether the non-joinder of the husband, admitting it to have been a material defect, could be taken advantage of by motion for a nonsuit, instead of by plea in abatement; and without inquiring whether the fact of such non-joinder, however objected to, was sufficient to have dismissed the suit, we proceed to the more important inquiry, whether the desertion and continued abandonment of the plaintiff by her husband, was not sufficient authority for her to sue in her own name?

If the husband be *civiliter mortuus*, or transported for a number of years, or has been abroad seven years, and not heard from, though he voluntarily left the country, the wife may be sued alone upon a contract made by her during that time. *Grasser and ux.* v. *Eckart and ux.*, 1 Binney, 575; 2 Campbell, 273; *Robinson* v. *Reynolds*, 1 Aikens, (Vermont), 175; 1 Chitty Pl. 67. In *Gregory* v. *Paul*, 15 Mass. 31, the authorities on the question are collected and reviewed by PUTNAM, J. Where the husband was exiled, the wife was permitted to sue in her own name (Co. Litt. 132 a), and the same reason applying, where the husband had abjured the realm, the wife was allowed to sue as a widow for her dower. She has in like case been permitted to alien her land without her husband. She is exempted from the disabilities of coverture. She may maintain trespass. *Eliza Wilmot's Case*, Moore, 851. She may sue for her jointure; and she may be sued as a *feme sole*. *Dubois* v. *Hale*, 2 Vernon, 614. She may make a will, and in all things act as if her husband was dead. *Countess of Portland* v. *Rogers*, Ib. 104. As the court well observed, the necessity of the case required that she should have such a power. It has been uniformly considered, that banishment or abjuration was a civil death of the husband. And the banishment of the

husband, even for a limited time, operates as a removal of the disabilities of coverture, so far as to enable the wife to sue and be sued as a *feme sole*, although the time of banishment had expired when the action was brought.˙ *Newsome* v. *Boyer*, 3 P. Williams, 37.

The facts and circumstances which should be considered as proof of his having abjured the realm, have been liberally regarded. Thus, where the husband resided abroad, leaving his wife to trade and gain credit as a *feme sole*, this has been considered as sufficient to entitle her to obtain credit, and to render her liable to be sued as a *feme sole*. 1 B. & P. 357. In *Gregory* v. *Paul*, above cited, the plaintiff had been domiciled in Massachusetts many years as a *feme sole*. Her husband was an alien. He never was in this country, and was not expected ever to be. He had abandoned his wife, and for a number of years made no provision for her support in his own country. He had not abjured his country, but he had compelled her to abjure it. The court further say: "If the husband had been a native citizen, and had deserted his wife and become a subject of a foreign state, the law would be clear for her on the adjudged cases. Miserable, indeed, would be the situation of these unfortunate women, whose husbands have renounced their society and country, if the disabilities of coverture should be applied to them during the continuance of such desertion." The court held, that the wife was competent to sue and be sued as a *feme sole*, and that her release would be a valid discharge for any judgment she might recover. The principle decided in *Gregory* v. *Paul*, was subsequently re-affirmed by the Supreme Court of Massachusetts, in the case of *Abbott* v. *Bayley*, 6 Pick. 89. The husband had driven the wife from her home by his cruelty and ill-usage; and for twenty years she had acted as a *feme sole*, and been treated as such by those with whom she had dealings. The husband, so far from supporting her, had been living in cohabitation with another woman. She had been obliged to live apart from him, and get her living by trading, her husband residing in another state. It was held, that she was entitled to sue as a *feme*

*sole.* In *Gregory* v. *Pierce,* 4 Metcalf, 478, the same court say : "The principle is now to be considered as settled in the state, that where the husband was never within the commonwealth, or has gone beyond its jurisdiction ; has wholly renounced his marital rights and duties, and deserted his wife ; she may make and take contracts, and sue and be sued as a *feme sole* in her own name. It is an application of an old rule of the common law, which took away the disability of coverture, when the husband was exiled or had abjured the realm."

To accomplish this change in the civil relations of the wife, the desertion of the husband must be absolute and complete. It must be a voluntary separation from, and abandonment of the wife, embracing both the fact and intent of the husband, to renounce *de facto,* and as far as he can do it, the marital relations, and leave his wife to act as a *feme sole.* Such is the renunciation, coupled with a continued absence in a foreign state or country, which is held to operate like an abjuration of the realm. *Gregory* v. *Pierce,* 4 Met. 479. See also *Edwards* v. *Davis,* 16 John. 286 ; *Cornwall* v. *Hoyt,* 7 Cow. 420 ; *Troughton* v. *Hill,* 2 Hay, 406 ; *Wright* v. *Wright,* 2 Dessaus. 244 ; *Dean* v. *Richmond,* 5 Pick. 461 ; *Lewis* v. *Lee,* 5 D. & R. 98, and 3 B. & C. 291 ; *Ex parte Frank,* 7 Bingh, 762 ; *Williamson* v. *Dawes,* Ib. 294.

The case of the present plaintiff, it seems to us, presents as cogent reasons for the application of this doctrine, as any of those cited. She had been deserted by her husband for fifteen years. It does not appear that, during all this time, he had furnished her any means of support. And she was left to her own labor, and to the credit she might be able to obtain as a *feme sole.* For more than ten years she does not hear from him ; she does not know where he is, and is induced to believe he is dead. When she does hear from him, he is in a foreign country, and writes for her to come to him. Forgetful of the fifteen years of desertion, she seeks his home in a foreign land. She no sooner arrives in Havana, than having reason to believe that he is living in a

state of concubinage with another woman, she determines not to live with him—declares her intention of returning—and takes the first opportunity of doing so. From these facts, we think that the following positions are established : First. That Smith, the husband, had voluntarily separated from, and abandoned his wife ; Second. That the desertion by him was absolute and complete, and was continued for so long a time, that he is to be considered as civilly dead ; Third. That this renunciation by the husband, coupled with his departure to a foreign state, and his continued residence there, amounting to an abjuration of the realm, shows not only the fact of abandonment, but the intent, so far as he could, to leave the wife free to act as a *feme sole*. Nor do we think that the relation between the parties has been restored by the request of the husband, that the plaintiff should join him at Havana, nor by the wife going to that place, and remaining at his house during her stay in the island. The son testifies that the plaintiff, immediately after her arrival, upon being informed of the course of life of her husband, expressed her determination not to live with him, and to return to the States ; and that she did return as soon as she could leave the island. The husband had no right, under the circumstances, to require her to abjure her country, nor to remain with him, if she believed he was living in a state of concubinage with another woman.

The only remaining question is, should the plaintiff have obtained authority from the District Court, as a married woman abandoned by her husband, to act as though unmarried, and to sue in place of her husband? Code, §§ 1456, 1459. We think she had this right, without the additional authority which the decree of the District Court could confer. The remedy afforded by the statute, is cumulative, and is more particularly applicable to cases where the abandonment is not such as to imply a total renunciation of marital rights, or where there appears to be no intention of leaving the wife free to act as a *feme sole*. We must say, in conclusion, that in our opinion, reason, justice and authority, concur in impressing us with the correctness of the rule we

have sought to lay down.   We see no principle upon which it can be considered necessary or proper, that the husband should be a party plaintiff in this suit.   The statute, (Code, § 1676,) requires that the suit shall be prosecuted in the name of the real party in interest.   What interest, we may inquire, has the husband, in the event of this suit?   For fifteen years, he has renounced the society of his wife, and lived apart from her; he has abjured his country, and during all the time, though able to do so, has made no provision for the support or maintenance of his wife and children.   It would be wholly irreconcilable with our notions of law and justice, that he should now be entitled to her earnings, or the little property she may have accumulated by her labor. And such has been the indifference he has so long manifested for her happiness or welfare, that it is more than idle to claim, that he is the injured party, by a tort upon her person, property or character, or entitled to the damages received in an action brought for a redress of her wrongs.

Judgment affirmed.