Decided 20 February, 1906.

## STATE *v.* CONKLIN.

84 Pac. 482.

MOTION TO STRIKE OUT PART OF AN INFORMATION.

1. In view of Section 1355, B. & C. Comp., providing that the only pleadings by a defendant in a criminal case shall be a plea and a demurrer, a motion to strike out part of an information is not a proper proceeding under the Oregon practice.

CRIMINAL LIBEL — EVIDENCE OF RUMORS — HARMLESS ERROR.

2. In view of Section 2170, B. & C. Comp., relating to showing the truth of a publication in criminal actions for libel, it is doubtful whether evidence of rumors corroborative of the alleged defamatory matter is admissible; but in the present case the error, if any, was harmless.

CRIMINAL LIBEL — EXCLUDING EVIDENCE OF RUMORS.

3. Where, on appeal from a conviction for libel, the evidence is not all in the record, the exclusion of evidence as to where defendant learned the facts contained in the publication could not be regarded as prejudicial error, since, if the truth of the publication had been established, the evidence was unnecessary and, if not, it was incompetent.

CRIMINAL LIBEL — ACCUSATION OF CRIME IS LIBELOUS.

4. A published statement that a woman employed a man to collect some money, and that after collecting it he failed to turn it over to her, finally admitting that he had used it and offering to give his note for it, charges the crime of embezzlement, under B. & C. Comp., § 1805, and is actionable per se.

TRIAL — DUTY TO DECLARE LEGAL EFFECT OF UNAMBIGUOUS LANGUAGE.

5. It is the duty of the trial judge to declare to the jury the legal effect of unambiguous language.

From Josephine: HIERO K. HANNA, Judge.

Arthur Conklin was convicted of a criminal libel and sentenced to pay a fine of $250 and costs.

AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. H. D. Norton.*

For respondent there was a brief over the names of *Andrew Murray Crawford,* Attorney General, and *A. E. Reames,* District Attorney, with an oral argument by *Mr. Crawford.*

MR. JUSTICE MOORE delivered the opinion of the court.

The defendant, Arthur Conklin, was informed against, tried, and convicted of the crime of willfully publishing false and scandalous printed matter of and concerning another, with intent to injure and defame such person, and, having been sentenced to pay a fine, he appeals. The facts constituting the alleged crime are charged as follows:

"That the said Arthur Conklin on, to wit, the 4th day of June, 1904, in the County of Josephine, State of Oregon, then and there being, did then and there willfully publish in a newspaper called Oregon Mining Journal, the following false and scandalous matter of and concerning R. G. Smith, to wit:

'To illustrate a little as to the character and integrity of R. G. Smith, we may cite one case standing on the judgment records to-day, the history of which shows that an old lady, by name Mrs. Sarah E. Lewis, a widow, had Smith (thereby meaning the said R. G. Smith) collect some money and after collecting it he (meaning the said R. G. Smith) failed to turn it over to her (meaning the said Sarah E. Lewis). He (meaning the said R. G. Smith) finally admitted that he had used it and would give her his notes for the same.' (Thereby meaning that the said R. G. Smith had feloniously appropriated said money of the said Sarah E. Lewis to his, the said R. G. Smith's, own use.)

Said published matter then and there being false and scandalous, and said publication then and there made by said Arthur Conklin with the intent to injure and defame

said R. G. Smith, contrary to the statutes in such case made and provided, and against the peace and dignity of the State of Oregon."

1. It is contended by defendant's counsel that an error was committed in denying his motion to strike from the information the innuendoes hereinbefore included in parenthesis, to which action of the court an exception was taken. Our statute regulating criminal procedure provides that the only pleading on the part of the defendant is either a demurrer or a plea: B. & C. Comp. § 1355. Invoking the rule that the inclusion of a prescribed method of practice is the exclusion of all others, a motion is not the proper means of challenging the sufficiency of an indictment or information, and hence no error was committed as alleged.

2. Defendant's counsel, in his opening statement, said to the jury that he expected to prove that the facts alleged to be libelous were current rumor; that the defendant had been informed that they were true, and, believing such report, he had published the article in question. The prosecuting attorney having objected to such statement, the court held that proof of common report would not justify the publication of a defamatory article, and referring to defendant's counsel, also observed:

"I think that whenever you have shown the facts to be true, then you may show every fact that would tend to excuse or justify, because under our law it may be punished although true, because our law, as it stands, is designed to throw a check upon the publication of such articles as this; because it engenders bad feeling in a community and may lead to further violence, and therefore, whenever anything is published of a man or of his family, which is defamatory and of this nature, the law requires the district attorney to prosecute the case, whether the party injured seeks to have it done or not. I suppose you would have to show the fact that the article was true, before you would be allowed to show the rumors. I do not think it would be

proper to say to the jury that you expect to prove these
rumors, because it would be on their minds, and might be
difficult to lay aside on the trial of the case."

Whether or not the rule originally prevailed by the an-
cient law of England that the truth of the matter published
could be given in defense in prosecutions for criminal libel,
but was changed by the Star Chamber, is not necessary to
inquire, though Mr. Chief Justice PARKER, in *Common-
wealth* v. *Blanding,* 3 Pick. 304 (15 Am. Dec. 214), admit-
ting certain privileged communications as exceptions, says:
"That by the common law always, so far as it can be traced
back, the doctrine as now mentioned in regard to exclud-
ing the truth of the matters alleged, as a defense in a public
prosecution for libel, with the exception stated, has been
recognized and enforced, will be denied by no lawyer who
has thoroughly examined the subject." Hawkins, in his
Pleas of the Crown (volume 1, p. 543), arguing that the
publication of a libel tended to breaches of the peace, says:
"And from the same ground, it further doth appear that
it is far from being a justification of a libel, that the con-
tents thereof are true, or that the person upon whom it is
made had a bad reputation; since the greater appearance
there is of truth, in any malicious invective, so much the
more provoking it is." In a note to Townsend on Slander
& Libel (4 ed.), § 211, a stanza from Burns and another
from Moore are quoted to illustrate the phrase, "The
greater the truth the greater the libel." Blackstone, in his
Commentaries on the Laws of England (book 3, *125), in
discussing this subject, observes: "With regard to libels
in general, there are, as in many other cases, two remedies;
one by indictment, and another by action. The former for
the public offense, for every libel has a tendency to the
breach of the peace, by provoking the person libeled to
break it, which offense is the same (in point of law) whether
the matter contained be true or false; and therefore the

defendant, on an indictment for publishing a libel, is not allowed to allege the truth of it by way of justification." See, also, 18 Am. & Eng. Enc. Law (2 ed.), 1068.

In *People* v. *Croswell*, 3 Johns. Cas. (N. Y.) 337, the defendant was indicted for libel committed by publishing of and concerning President Jefferson certain alleged defamatory matter. A postponement of the trial was asked, to enable the defendant to secure the testimony of a witness by whom, he stated in his affidavit for a continuance, he expected to prove the truth of the charge. The motion having been denied, the defendant was tried and convicted, and appealed. In the supreme court, his counsel, with whom was Hamilton, contended that, pursuant to the ancient law of England, it was originally held that the truth of the charge was admissible in evidence in an action for criminal libel, and that, though such rule was for a time abrogated by order of the Star Chamber, it ceased to exist with the destruction of the pernicious power that invoked it, and, as the doctrine of the common law was brought by the colonists to the shores of North America, it prevailed in New York, and hence an error was committed in refusing to postpone the trial to enable the defendant to secure the desired testimony. Mr. Chief Justice LEWIS, on the last day of the May term, 1804, observed that, the court being equally divided in opinion in respect to the question presented, a new trial was therefore denied. No judgment of affirmance, however, was given. A bill concerning libels was passed by the legislative assembly of New York and became a law April 6, 1805. Section 2 of such act is as follows: "And be it further declared and enacted, that in every prosecution for writing or publishing any libel, it shall be lawful for the defendant, upon the trial of the cause, to give in evidence, in his defense, the truth of the matter contained in the publication charged as libelous:

47 OR.——33

provided always, that such evidence shall not be a justification, unless, on the trial, it shall be further made satisfactorily to appear that the matter charged as libelous was published with good motives and for justifiable ends." Mr. Chief Justice HORTON, in *Castle* v. *Houston*, 19 Kan. 417 (27 Am. Rep. 127), referring to the section just quoted, says: "Since the adoption of the New York statute declaratory of the law of libel in criminal actions, nearly every State in the Union has made the subject a matter of constitutional or statutory provision." See, also, on this subject, the notes to the case of *Warner* v. *Clark*, 21 L. R. A. 502.

The legislative assembly of this State, in 1864, passed an act, which remains in force and is as follows:

"In all criminal prosecutions for libel, the truth may be given in evidence, and if it shall appear to the jury that the matter charged as libelous is true and was published with good motives and justifiable ends, the defendant must be found not guilty": B. &. Comp. § 2170.

In the case at bar, an examination of the language used by the court would seem impliedly to admit that, when the truth of the charge had been established as a defense in a criminal action for libel, evidence of rumors corroborative of the alleged defamatory matter was admissible. It may well be doubted whether or not, under a statute like ours, such evidence is ever admissible in a criminal action for libel; but, as the court's remark in respect to the admissibility of such evidence was more favorable to the defendant than he had a right to claim, no error can be predicated thereon.

3. R. G. Smith, as a witness for the State, testified, in effect, that in 1904 he was elected a member of the legislative assembly of this State, and that the article, a copy of which is set out in the information, was published in the course of the political campaign of that year. The defendant, as a witness in his own behalf, testified sub-

stantially that in 1904 he was engaged in publishing a partisan newspaper, supporting the nominees of the political party of which he is a member; that, during the campaign preceding the general State election, he discussed in the newspaper which he published the political issues from his standpoint and commented upon the qualifications of candidates for office; an d that Smith was one of the nominees of the opposing party, whose election he was legitimately trying to prevent. The witness was thereupon asked to state from what source he had gained information of the facts set out in the article complained of. An objection to this question having been sustained, an exception was reserved, and it is insisted by defendant's counsel that an error was thus committed. The bill of exceptions does not purport to contain all the testimony given at the trial, and it cannot be said from an inspection thereof whether or not any testimony was offered tending to prove the truth of the charge. If such fact was clearly established, however, evidence of rumors thereof was unnecessary, but if not substantiated, such evidence was incompetent, so that, on either ground, no error was committed in refusing to permit the defendant to answer the question asked him concerning the source of the information respecting the rumor.

4. The court, instructing the jury, said:

"A man who collects money for another and neglects or refuses to turn it over, but uses the money himself, commits a larceny under our statute. It is termed embezzlement, and is punishable as larceny. You will notice the charge in this information is that he charges Mr. Smith with having collected the money of a widow, and that he failed, he says, to turn it over to her, and that he finally admitted that he used it. I repeat again, that a man who performs the acts that are described in this information would be subject to a charge of larceny, under the name of embezzlement."

An exception having been taken to this part of the charge, it is insisted by defendant's counsel that an error was committed in giving it. It is argued that the words complained of do not impute the commission of a crime, but that they are ambiguous, and if susceptible of a defamatory interpretation, the question whether or not the publication was libelous should have been submitted to the jury. "Written words," say the editors of the American & English Encyclopedia of Law (2 ed.), vol. 18, p. 864, "are libelous in all cases where, if uttered orally, they would be actionable." Spoken words are actionable per se only when they impute the commission of an offense liable to indictment and punishment, either at common law or by the statute: *Davis* v. *Sladden*, 17 Or. 259 (21 Pac. 140); *Griffin* v. *Moore*, 43 Md. 246; *Lukehart* v. *Byerly*, 53 Pa. 418. If the words charged do not imply the commission of such an offense, an innuendo cannot extend their meaning so as to render them actionable per se: 18 Am. & Eng. Enc. Law (2 ed.), 982; Townsend, Slander & Libel (4 ed.), § 336; Starkie, Slander & Libel (Wood's Notes), § 444; *Cole* v. *Neustadter*, 22 Or. 191 (29 Pac. 550); *Haines* v. *Campbell*, 74 Md. 158 (21 Atl. 702, 28 Am. St. Rep. 240). An examination of the alleged defamatory language set out in the information, when freed from the innuendoes, fails directly to state that Mrs. Lewis employed Smith to collect money "for her"; but, when it is remembered that the statement so published is that Smith failed to turn the money over to her when collected, that he admitted he had used it and would give her his notes therefor, the charge, when construed in its entirety, as the rules of law direct (18 Am. & Eng. Enc. Law, 2 ed., 983), is that the money was collected for Mrs. Lewis, and constituted embezzlement, as prescribed by our statute (B. & C. Comp. § 1805), thus making the accusation actionable per se: 18 Am. & Eng. Enc. Law (2 ed.), § 880.

5. The language used is not, in our opinion, ambiguous or susceptible to different constructions, and hence it was the duty of the court to interpret the legal effect thereof: *State* v. *Syphrett*, 27 S. C. 29 (2 S. E. 624, 13 Am. St. Rep. 616); *Cotulla* v. *Kerr*, 74 Tex. 89 (11 S. W. 1058, 15 Am. St. Rep. 819); *Gabe* v. *McGinnis*, 68 Ind. 538; *Gregory* v. *Atkins*, 42 Vt. 237.

No errer was committed in charging the jury in effect that the language used was libelous per se, and hence the judgment is affirmed.                                        AFFIRMED.