MARGARET BATTLES, APPELLANT, V. HAGERMAN TYSON, APPELLEE.

FILED NOVEMBER 22, 1906. No. 14,500.

1. **Slander: QUESTION FOR JURY.** Unless words upon which a charge of slander is based are plain and unambiguous in their meaning, the meaning intended by the defendant and the understanding of those hearing him should be left for the jury to determine.

2. ———. To charge a woman with being a lewd character, of using her body for commercial purposes, and with keeping a gambling room is actionable *per se*.

APPEAL from the district court for Fillmore county: LESLIE G. HURD, JUDGE. *Reversed*.

*F. B. Donisthorpe*, for appellant.

*Curtis & Waring, contra.*

DUFFIE, C.

The petition in this case alleges that the defendant, on or about August 21, 1904, in a conversation had with divers persons, falsely and maliciously spoke and published the following false and defamatory words of and concerning her: "I want it understood that I am not running a gambling house, and that if a girl could not have decent company she has no business to have company at all; that she had three men in her room with her." It is further alleged that in the presence and hearing of others the plaintiff falsely and maliciously did speak and publish the following false and defamatory words of and concerning the plaintiff: "She was locked up in her room with three men in my house, and after they had gone I found an empty whiskey bottle on her table." It is further alleged by way of innuendo that the defendant, in so speaking of the plaintiff, intended, and that it was so understood by those hearing him, that the plaintiff was entertaining company which was not decent, and was running a gambling room in his house; that she was a woman of immoral character, using her body for commercial purposes, and that she had three men in her room with her for that purpose; that she was a young woman of lewd character, permitting men to enter her room and lock the door for sexual intercourse, and that she was in the habit of using intoxicating liquors. The defendant interposed a demurrer to this petition, which

was sustained by the court, and the plaintiff electing to stand on her petition, her action was dismissed.

The district court undoubtedly sustained the demurrer upon the theory that the words spoken did not charge a criminal offense, and, as the petition did not allege special damages suffered by the plaintiff on account of the alleged slander, that it did not state a cause of action. The defendant, by demurring to the petition, admits speaking words as alleged. Whether they would bear the construction placed upon them in the petition, and whether those hearing them so understood them, is, we think, a question for the jury, and not for the court. It is true that no innuendo can give to plain and unambiguous words a meaning different from that in which they are generally understood, but in this case it does not require any far stretch of the imagination to accept the meaning contended for by the plaintiff in the use of the words defendant admits he used in speaking of her. As said by the supreme court of Minnesota in *Stroebel v. Whitney*, 31 Minn. 384, 18 N. W. 98: "It is going too far to argue that words must *necessarily* bear a criminal import, in order to render them actionable *per se*. It is not enough to show by ingenious argument that they might possibly admit of some other meaning.  *  *  *  It is not necessary that the words should make the charge in express terms. They are actionable if they consist of a statement of facts which would naturally and presumably be understood by the hearers as a charge of crime." Newell, in his work, Slander and Libel (2d ed.), ch. 7, sec. 5, says: "There is no offense which can be conveyed in so many multiplied forms and figures as that of incontinence. The charge is seldom made, even by the most vulgar and obscene, in broad and coarse language. If the language used is such that in its ordinary acceptation a person of ordinary understanding could not doubt its signification it will be *prima facie* sufficient."

We have not had occasion to determine whether a charge of unchastity brought against an unmarried woman

is actionable *per se.* By the strict rules of the common law it was not; and special damages because of the charge had to be alleged and shown. That this rule was unsatis-factory to many courts is shown by the expression of the judges. In *Lynch v. Knight,* 9 H. L. Cas. 577, Lord Campbell said: "I may lament the unsatisfactory state of our law, according to which the imputation by words, however gross, on an occasion, however public, upon the chastity of a modest matron or a pure virgin, is not actionable without proof that it has actually produced special temporal damages to her." Lord Brougham, in a separate opinion, commenting on this statement, said: "Instead of the word 'unsatisfactory' I should substitute the word 'barbarous.'"

In *Smith v. Silence,* 4 Ia. 321, the supreme court of Iowa, on examining the question, mentions a number of states, among which are North Carolina, South Carolina, Indiana, Illinois, Kentucky and Alabama, in which the rule has been modified by statute; and other states, including Massachusetts, New Hampshire, Connecticut, Ohio and Pennsylvania, in which, by the decisions of their courts of last resort, it is now held that charging a woman, married or unmarried, with unchastity is actionable without proof of special damages.

It may be admitted that, if there was nothing else than the number of cases holding to the old common law rule, and if our action here had nothing else to influence or recommend it, we would be compelled to follow that rule; but as society is now constituted, a female against whom the want of chastity is established is driven beyond the reach of every courtesy and charity of life, and sometimes even beyond the portals of humanity. By common consent such an imputation is now everywhere treated as the deepest insult and the vilest charge that could be given or inflicted upon the victim or her friends. She is denied the society in which she has been wont to move. If in want of employment, her character is gone, and her chance for self-support is injured beyond redress. In our

judgment, such a charge is more damaging in its effect than many which are most severely punished by our penal laws. If, as alleged by the plaintiff, the defendant, by the words spoken of her, meant, and intended to mean, that she was offering her body for sexual intercourse, or was the keeper of a room where gambling was carried on, and this was the meaning understood by those to whom the words were spoken, they are actionable *per se*, and no special damages need be alleged or shown in order to sustain the action.

We recommend a reversal of the judgment and remanding the cause for trial.

JACKSON, C., concurs.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for a new trial.

REVERSED.