## NICHOLSON *v.* DILLARD.

1. The motion to dismiss the bill of exceptions in this case is without merit; as it comes within the ruling made in the case of *Castleberry* v. *Parrish*, 135 *Ga.* 527 (69 S. E. 817).

2. The following words, spoken of a female schoolteacher, are actionable in a suit for slander, brought by the person of whom the words were spoken, against the person speaking them, to wit: "That under the circumstances I can not send to her; that her character was not good; that my daughter, Claudie Dillard, had heard things concerning her character, and that she would not go to her unless I made her. That I have been told things by several that pointed to bad character. That I have been told by young men that they had been to her home and had taken drinks of coca cola, cider, or something, and that she would give toasts that would actually make them blush, and that she and her sister, Susie Nicholson, lived in a home alone in Buena Vista, and that this house was a regular stopping-off place for traveling men. That if she was taken for a teacher it will cut me out of school, as she was mighty fast from what I have been told, and I believe what I have heard to be true. That I have a particular reason for not sending to her, that I have been told that her character was bad, that I have been particular with my own girl, and I don't [care] for her to associate with her."

3. At common law only words imputing a crime to another were actionable per se; but under our statute words calculated to injure one in his trade or profession are actionable.

4. Privileged communications are absolute or conditional: in the former case the privilege is a bar to recovery; in the latter case, in order for communications to be so privileged as to be a bar in a suit for slander, it must appear that the words were spoken bona fide to protect the speaker's private interests, and not with malicious intent.

DECEMBER 14, 1911.

Action of slander. Before Judge Gilbert. Chattahoochee superior court. June 1, 1911.

*J. J. Dunham, C. C. Minter,* and *Hatcher & Hatcher,* for plaintiff. *Wynn & Wohlwender,* for defendant.

HILL, J. Mary Nicholson filed her petition against James S. Dillard, in which it was alleged that the defendant did falsely and maliciously say of plaintiff to Mr. C. H. McGlaun, who had called on petitioner in behalf of petitioner's application to teach school: "That under the circumstances I can not send to her (meaning petitioner) ; that her (meaning petitioner's) character was not good; (meaning that petitioner was not virtuous) ; that my daughter, Claudie Dillard, had heard things concerning her (meaning petitioner's) character, and that she (meaning his daughter Claudie) would not go to her (meaning petitioner) unless I made her (mean-

ing his daughter Claudie). That I have been told things by·several that pointed to bad character (meaning that petitioner was not a virtuous woman). That I have been told by young men that they (meaning the young men) had been to her (meaning petitioner's) home and had taken drinks of coca cola, cider, or something, and that she (meaning petitioner) would give toasts that would actually make them (meaning the young men) blush (meaning that petitioner was a debauched and immoral person), and that she (meaning petitioner) and her (meaning petitioner's) sister, Susie Nicholson, lived in a home alone in Buena Vista, and that this house (meaning the home wherein petitioner lived) was a regular stopping-off place for traveling men (meaning that the home of petitioner was a place of ill repute). That if she (meaning petitioner) was taken for a teacher it will cut me out of school, as she (meaning petitioner) was mighty fast from what I have been told (thereby meaning that your petitioner was not virtuous), and I believe what I have heard to be true (meaning that he, Dillard, did not believe petitioner to be a virtuous woman)." And also that the defendant used the following language·in a conversation with Mr. Wess McGlaun: "That I have a particular reason for not sending to her (meaning petitioner), that I have been told that her (meaning petitioner's) character was bad (meaning petitioner was not a virtuous woman), that I have been particular with my own girl, and I don't [care] for her (meaning his daughter) to associate with her (meaning petitioner)." Plaintiff further alleged that by reason of the "false, malicious, and defamatory" statements made by said Dillard concerning her character, she had failed to be selected as a teacher for the school for which she applied, and she alleged as special damages the sum of $400 and as general damages the sum of $5,000. The defendant filed both special and general demurrers to the petition. The first special demurrer was as follows: "Paragraph third of said petition is specially demurred to, on the ground that the language, to wit: ' That under the circumstances I can not send to her; that her character was not good; that my daughter, Claudie Dillard, had heard things concerning her character, and that she would not go to her unless I made her.' That I have been told things by several that pointed to bad character. That I have been told by young men that they had been to her home and had taken drinks of coca cola,

cider, or something, and that she would give toasts that would actually make them blush, and that she and her sister, Susie Nicholson, lived in a home alone in Buena Vista, and that this house was a regular stopping-off place for traveling men. That if she was taken for a teacher it will cut me out of school, as she was mighty fast from what I have been told, and I believe what I have heard to be true,' are not such words and language as would in law entitle plaintiff to a cause of action against this defendant, for the reason that such words are not in their nature slanderous, and that such words are too general to inform defendant of plaintiff's demand, and that they fail to set out in what way the said words could or did affect said plaintiff, and said words and language could not in any wise affect the plaintiff's trade, calling, or profession, and they fail to state wherein the same was or could have been affected; and that said words or language do not impute to plaintiff the commission of a crime punishable by law, or with any contagious disorder, or being guilty of an act which would exclude her from society, nor do they relate to said plaintiff's trade, office, or profession, calculated to injure her therein, nor are such words productive of special damages flowing therefrom, and no special damages are set out therein." The general demurrer was to the effect that no sufficient cause of action was set out in said petition, and that no special damages were alleged. The court sustained the special demurrers to paragraphs 3 and 4 of the petition, on the ground that the words set out, independent of innuendoes, were not sufficient to set out a cause of action. No ruling was made upon the demurrer to the 5th paragraph of plaintiff's petition. The court also sustained the general demurrer and ordered the petition dismissed.

1. On the call of the case in this court, a motion was made to dismiss the bill of exceptions, because it had not been tendered to the judge within thirty days from the rendition of the order and judgment sustaining the demurrers of the defendant and dismissing the plaintiff's petition, "in that the record shows that the judgment complained of was rendered on the 1st day of June, 1911, and the certificate of the judge shows that the bill of exceptions was tendered to him on July 8, 1911, and the certificate also shows that the judge was absent only from June 21, 1911, to July 3, 1911, and fails to show any reason why the bill of exceptions was not presented and certified sooner than the 8th day of July, 1911, or

that the plaintiff in error was without fault." The bill of exceptions itself recites that "Now within 30 days from the rendition of said judgment," etc., comes the plaintiff and presents this bill of exceptions, etc. The judge also certifies: "I was out of the circuit and State from June 20th to July 3rd, 1911." Under the repeated rulings of this court, a writ of error will not be dismissed where it appears from the bill of exceptions and the certificate of the trial judge that it was *tendered* within thirty days from the date of the judgment complained of. *Castleberry* v. *Parrish,* 135 *Ga.* 527 (69 S. E. 817). The recital in the bill of exceptions that it was tendered within thirty days after the rendition of the judgment complained of is not negatived by the statement of the judge in his certificate, "I was out of the circuit and State from June 21st to July 3, 1911."

2-4. This was a suit for slander, brought by Mary Nicholson against James S. Dillard in Chattahoochee superior court. The court below sustained general and special demurrers filed to the petition, and we are called upon to decide whether this judgment was error. The answer to that question depends upon whether the words spoken by the defendant are actionable per se, or whether special damages must be alleged. The plaintiff was a schoolteacher and had applied for a school. She had secured the requisite number of patrons, save one, to obtain the school. That one was the defendant, James S. Dillard. To C. H. McGlaun, who had called on Dillard in behalf of the plaintiff's application for the school, the defendant is alleged to have used the following language of and concerning the plaintiff, and to have done so falsely and maliciously, to wit: "That under the circumstances I can not send to her; that her character was not good; that my daughter, Claudie Dillard, had heard things concerning her character, and that she would not go to her unless I made her. That I have been told things by several that pointed to bad character. That I have been told by young men that they had been to her home and had taken drinks of coca cola, cider, or something, and that she would give toasts that would actually make them blush, and that she and her sister, Susie Nicholson, lived in a home alone in Buena Vista, and that this house was a regular stopping-off place for traveling men. That if she was taken for a teacher it will cut me out of school, as she was mighty fast from what I have been told, and

I believe what I have heard to be true." And again, "That I have a particular reason for not sending to her, that I have been told that her character was bad, that I have been particular with my own girl, and I don't [care] for her to associate with her." It appears from the record that the plaintiff did not secure the position as teacher of the school, the defendant Dillard refusing to support the plaintiff for the reasons given by him above. Are the words of defendant actionable? We think they are. We hold that the language set forth in the plaintiff's petition is susceptible of the construction placed upon it by the innuendo, and is calculated to injure the plaintiff, and therefore actionable. Our law defines slander as follows: "Slander, or oral defamation, consists, first, in imputing to another a crime punishable by law; or, second, charging him with having some contagious disorder, or being guilty of some debasing act which may exclude him from society; or, third, in charges made on another in reference to his trade, office, or profession, calculated to injure him therein; or, fourth, any disparaging words productive of special damage flowing naturally therefrom. In the latter case, the special damage is essential to support the action; in the three former, damage is inferred." Civil Code (1910), § 4433. The third paragraph of the above section provides that slander shall consist "In charges made on another in reference to his trade, office, or profession, calculated to injure him therein." The demurrer admits the language was falsely spoken of the plaintiff. It was spoken in reference to her fitness as a teacher. Teaching seems to have been the plaintiff's profession. If the above language was spoken, and spoken of the plaintiff in reference to her "profession," the one question remains to be determined, namely, was it calculated to injure her therein? We have said that the language was susceptible of the construction put upon it by the petition; and if so, we have substantially from the petition this: That the defendant meant the plaintiff's character was not good, meaning that plaintiff was not virtuous; that the defendant had been told by young men that they had been to the plaintiff's home and taken drinks of coca cola, cider, or something, and that the plaintiff would give toasts that would actually make them blush, meaning that petitioner was a debauched and immoral person; and that plaintiff and her sister, Susie Nicholson, lived in a home alone in Buena Vista, and that the house was a regular stopping-

place for traveling men, meaning that the house of the plaintiff was a place of ill repute; that if the plaintiff was taken for a teacher it would cut defendant out of the school, as plaintiff was mighty fast from what the defendant had been told, thereby meaning that the plaintiff was not virtuous; and that the defendant believed what he had heard to be true; that defendant had particular reason for not sending to the plaintiff; that he had been told that her character was bad, meaning that the plaintiff was not a virtuous woman; that the defendant had been particular with his own girl, and didn't want her to associate with the plaintiff. This language is susceptible of the meaning placed upon it by the innuendo in plaintiff's petition. If so, was it calculated to injure the plaintiff in her profession as a schoolteacher? We think the language of defendant was calculated to injure the plaintiff. It may be stated, as a general rule, that published words, written or oral, falsely used, are actionable if they directly tend to the prejudice or injury of any one in his profession, trade, or business. 25 Cyc. 326 (G); Civil Code (quoted supra); *Hardy* v. *Williamson,* 86 *Ga.* 551 (12 S. E. 874, 22 Am. St. R. 479). But the defendant insists that his language spoken of the plaintiff is not actionable, because the language quoted was privileged under our law, and hence he is protected by the bar of privileged communications, which shields one coming within its provisions. The following communications are declared to be privileged: "1. Statements made bona fide in the performance of a public duty. 2. Similar statements in the performance of a private duty, either legal or moral. 3. Statements made with the bona fide intent, on the part of the speaker, to protect his own interest in a matter where it is concerned." Civil Code (1910), § 4436. But this section should be construed in connection with the next following section (§ 4437), which is as follows: "In every case of privileged communications, if the privilege is used merely as a cloak for venting private malice, and not bona fide in promotion of the object for which the privilege is granted, the party defamed has a right of action." Communications may be either absolutely or qualifiedly privileged. In the latter case it furnishes only a prima facie lawful excuse for making it. Townshend on Slander and Libel (4th ed.), § 209; *Cooley* v. *Galyon,* 109 Tenn. 1 (70 S. E. 607, 60 L. R. A. 139, 97 Am. St. R. 823); *Atlanta News Pub. Co.* v. *Medlock,* 123 *Ga.* 714 (51 S. E. 756, 3 L. R. A.

(N. S.) 1139) ; *Sheftall* v. *Central Railway Co.*, 123 *Ga.* 589 (51 S. E. 646) ; Henry *v.* Moberly, 6 Ind. App. 490 (33 N. E. 981). In the former case no remedy can be had in a civil action. But in the latter case, while the communication may be privileged, it is so in a qualified sense. One may use of another language, if true, with a bona fide intent to protect his own interest in a matter where it is concerned; but in such case he must do so at his peril if he exceeds the limit of his privilege and uses the language, not merely to protect his interest, but to vent his private malice on the person spoken of. Whether it is so spoken is properly a question of fact for the jury trying the case to determine.

At common law an action of slander could not be maintained for imputing want of chastity to a female, in the absence of an allegation of special damages; for such language at common law to be actionable per se, the words must impute some crime or misdemeanor. Note to Battles *v.* Tyson, 24 L. R. A. (N. S.) 577, 578 (77 Neb. 563, 110 N. W. 299). 1 Odgers on Libel and Slander, *86, *87, *88 (Am. ed. 1887, from 2d Eng. ed.) ; Townshend on Slander and Libel (4th ed. 1890), § 172, and cases cited. And this probably accounts for the decisions in some States where certain slanderous words are held not actionable; for, in the absence of statutes so declaring, the lack of chastity was not punishable at common law. At common law it was held that to charge that the plaintiff had a bastard child was not actionable, for she was not punishable in the temporal courts, nor under 18 Eliz., unless the child was rightly chargeable to the parish. 2 Salk. 694; 2 Ld. Raym. 1004. In our State, before the statute (and code), only words imputing a crime were actionable per se. *Pledger* v. *Hathcock*, 1 *Ga.* 550. Words imputing the crime of fornication were held actionable per se, in *Richardson* v. *Roberts*, 23 *Ga.* 215, 221 (8). And the following words were held slanderous and actionable : "She is a girl of bad character; I believe her to be a whore." *Beggerly* v. *Craft*, 31 *Ga.* 309 (76 Am. D. 687). Words alleged to have been spoken are to be taken in the sense which is most natural and obvious, and in which those to whom they are spoken will be sure to understand them. 1 *Ga.* 550, supra. In the case of Henry *v.* Moberly, supra, it was held that to say of a schoolteacher, "her character and conduct were not such as would give her a right influence over her pupils, and that she knowingly claimed wages not

due her, is actionable per se." "It was held actionable to call a schoolmistress a dirty slut, or with being insane, or to charge by writing a schoolteacher with making a false report to the school visitors, and with general untruthfulness, or with want of chastity." Townshend on Slander and Libel (4th ed.), § 190, p. 241; Bodwell v. Swan, 3 Pick. 379 (15 Am. D. 228). Authorities might be greatly multiplied in support of the ruling here made, but we deem those given sufficient to support the proposition that the language attributable to the defendant tended to injure the plaintiff in her trade or profession as a schoolteacher. We think that the words alleged to have been spoken by the defendant are calculated to injure the plaintiff in her trade or profession as a schoolteacher; and therefore that the court below erred in sustaining the demurrers, general and special.

*Judgment reversed. All the Justices concur.*