Argued June 9, affirmed July 27, 1920.

# BARNETT *v.* PHELPS.*

(191 Pac. 502.)

**Libel and Slander—Classification of Words "Actionable Per Se."**

1. Words "actionable *per se*" are usually divided into four classes, words which impute a charge which if true will subject the party charged to an indictment for crime involving moral turpitude; words which impute that a party is infected with some contagious disease which would exclude him from society; words which impute to the party unfitness to perform the duties of an office, or employment of profit, etc.; and words which would prejudice a person in his profession or trade.

**Libel and Slander—Incontinence not Offense at Common Law.**

2. At common law, private acts of incontinence were cognizable only in the ecclesiastical courts, and repeated acts of fornication or adultery constituted no crime, though committed with many persons.

**Libel and Slander—Not Slanderous Per Se to Call Unmarried Woman "Whore."**

3. In the absence of statute, it is not slanderous *per se* to call an unmarried woman a whore; that is, a person given to promiscuous intercourse.

> [As to charging woman with unchastity as actionable *per se*, see note in 15 Ann Cas. 1242.]

**Libel and Slander—Calling Married Woman Prostitute Slanderous Per Se.**

4. As adultery is a statutory crime in Oregon, to speak of a married woman as a prostitute is to charge the commission of an offense, and such language would be actionable *per se*.

**Libel and Slander—Innuendo can Only Serve to Explain Some Matter Already Expressed.**

5. Innuendos cannot extend the meaning of words asserted to be slanderous beyond their natural import, and can only serve to explain some matter already expressed.

---

*On the question of slander and libel in charging woman with unchastity, see notes in 24 **L. R. A. (N. S.)** 577; 48 **L. R. A. (N. S.)** 615.

On actionable character of epithets that impute immorality to a woman, see note in 4 **L. R. A. (N. S.)** 560.

On effect of innuendo on defense of truth to civil action for libel or slander, see notes in 31 **L. R. A. (N. S.)** 140; 50 **L. R. A. (N. S.)** 1043.

On innuendo in complaint for libel, see note in 3 **A. L. R.** 1585.

REPORTER.

**Libel and Slander—Mere Incontinence not Offense at Common Law, but Public Indecency was.**

6. At common law, mere cohabitation of a man and woman though unmarried was not criminal, unless there was something publicly indecent, nor were fornication or adultery criminal unless accompanied by circumstances such as publicly to render them a nuisance, though acts of gross and open lewdness were punishable.

**Libel and Slander—To Charge Unmarried Woman With Being a Prostitute is not Slanderous Per Se.**

7. Despite Section 2087, L. O. L., to charge an unmarried woman with being a prostitute or whore is not slanderous *per se,* for neither the acts nor condition are necessarily criminal, and in such case for a woman to recover she must show and prove special damage.

From Tillamook: GEORGE R. BAGLEY, Judge.

Department 1.

Ida Barnett, an unmarried woman, sued Florence Phelps for damages, alleging that on one occasion in the presence of Mrs. Harry Mitchell the defendant spoke of the plaintiff as a "whore," and that on another occasion, and in the presence of George H. Benson, the defendant characterized the plaintiff as a "prostitute." The evidence concerning the first occasion strictly conformed with the allegation; and although the evidence as to the second occasion did not exactly agree with the language of the complaint, we shall assume that the evidence was sufficient to sustain the charge that the defendant spoke of the plaintiff as a prostitute.

There was neither allegation nor proof of special damage. At the close of the plaintiff's case, the trial court, upon the motion of the defendant, granted an involuntary judgment of nonsuit. The plaintiff appealed.                               AFFIRMED.

For appellant there was a brief over the names of *Mr. Oliver M. Hickey* and *Mr. H. T. Botts,* with an oral argument by *Mr. Hickey.*

For respondent there was a brief over the name of *Messrs. Johnson & Handley,* with an oral argument by *Mr. Sidney S. Johnson.*

HARRIS, J.—The only question for decision is whether the court erred in entering an involuntary judgment of nonsuit. If the words employed by the defendant are not actionable *per se* in this jurisdiction, then the inescapable conclusion is that the trial court ruled correctly.

Spoken words are either actionable or not actionable. Actionable words are divided into two classes: (1) Those which are actionable in themselves; or *per se;* and (2) those which are actionable only upon allegation and proof of special damage, or *per quod.* Defamatory words, where spoken, may or may not be actionable *per se,* depending upon whether or not they may properly be assigned to one or more of the several classes of cases which the rules of the common law have designated as actionable *per se.* If defamatory words are not actionable *per se* the complaint must allege and prove special damage. Words of both classes are actionable on the same ground and for the same reason: 17 R. C. L. 264. "The material element," this court has said:

"Which lies at the foundation of the action of slander is social disgrace, or damages to character in the opinion of other men": *Quigley* v. *McKee,* 12 Or. 22 (5 Pac. 347, 53 Am. Rep. 320).

1. Both classes of words are the natural and proximate causes of pecuniary damage. Words actionable *per se* are classified as such on the theory that their injurious character is admitted by all men; and that on that account they are conclusively presumed to result in damage; but other words are actionable only

upon allegation and proof of their injurious effect. Words actionable *per se* are usually divided into four classes, as follows: (1) Words which impute a charge which, if true, will subject the party charged to an indictment for a crime involving moral turpitude, or subject him to an infamous punishment; (2) words falsely spoken of a person which impute that the party is infected with some contagious disease, where, if the charge is true, it would exclude the party from society; (3) defamatory words, falsely spoken of a person, which impute to the party unfitness to perform the duties of an office or employment of profit, or the want of integrity in the discharge of the duties of such an office or employment; and (4) defamatory words, falsely spoken of a party which prejudice such party in his or her profession or trade: *Pollard* v. *Lyon,* 91 U. S. 225 (23 L. Ed. 308, see, also, Rose's U. S. Notes); *Williams* v. *Riddle,* 145 Ky. 459 (140 S. W. 661, Ann. Cas. 1913B, 1151, 36 L. R. A. (N. S.) 974).

2, 3. Obviously, the words spoken by the defendant cannot be assigned to ány of the four classes, unless it be to the first one mentioned; hence we shall seek to discover whether the words uttered by the defendant are in the present state of the law in this jurisdiction, included in the first class of cases. It is apparent that this classification made of actionable words is based upon an arbitrary rule rather than upon the result of inquiries concerning proximate cause and natural effect, because if the rule were framed and governed by considerations of cause and effect it would necessarily include many cases now excluded: *Quigley* v. *McKee,* 12 Or. 22, 24 (5 Pac. 347, 53 Am. Rep. 320); *Williams* v. *Riddle,* 145 Ky. 459

(140 S. W. 661, Ann. Cas. 1913B, 1151, 36 L. R. A. (N. S.) 974).

An examination of the authorities will disclose the fact, as illustrated in *State* v. *Conklin,* 47 Or. 509, 516 (84 Pac. 482), that statements may be found to the effect that spoken words are actionable *per se* if they impute the commission of an offense liable to indictment and punishment, without any qualifying expressions concerning the element of moral turpitude, or the character of the penalty prescribed for the crime. The precedent last mentioned must, however, be read in the light of the facts there under investigation, and, when so read, it becomes manifest that the court was not called upon to decide, and did not attempt to decide, whether words were actionable *per se* if imputing a crime for which an indictment would lie, regardless of the presence or absence of moral turpitude, and regardless of the nature of the prescribed punishment. Perhaps it is not now important, except in the interest of accuracy, to determine whether the single fact that the imputed offense is indictable is alone sufficient, without the presence of either the element of moral turpitude or the element of infamous punishment; for the reason that although it may be difficult to phrase a satisfactory definition of moral turpitude (*Ex parte Mason,* 29 Or. 18, 22 (43 Pac. 651, 54 Am. St. Rep. 772), the words uttered by the defendant impute a charge which, if true and constituting a crime, unquestionably involve moral turpitude: *Pollard* v. *Lyon,* 91 U. S. 225 (23 L. Ed. 308). In *Brooker* v. *Coffin,* 5 Johns. (N. Y.) 188 (4 Am. Dec. 337), the following rule was given as the test:

"In case the charge, if true, will subject the party charged to an indictment for a crime involving moral

turpitude, or subject him to an infamous punishment, then the words will be, in themselves, actionable.''

This test has been so often applied that it may be accepted as a correct statement of the law: *Pollard* v. *Lyon,* 91 U. S. 225 (23 L. Ed. 308); *Davis* v. *Sladden,* 17 Or. 259 (21 Pac. 140); *Clark* v. *Morrison,* 80 Or. 240, 244 (156 Pac. 429).

Under the custom of London a whore was ''carted,'' and on that account to characterize a woman as such was actionable *per se* in London; but with this exception a private act of incontinence, whether fornication or adultery, was cognizable only in the ecclesiastical courts: 1 Bishop's New Cr. Law, §§ 38, 501; *State* v. *Moore,* 1 Swan (Tenn.), 136; *State* v. *Smith,* 32 Tex. 167; 2 Wharton Cr. Law (10 ed.), §§ 117, 1741; 1 Am. & Eng. Ency. Law (2 ed.), 747; 13 Am. & Eng. Ency. of Law (2 ed.), 1119. Nor did repeated acts of fornication or adultery constitute a crime, even though committed with many persons: 1 Bishop's New Cr. Law, § 501; *State* v. *Evans,* 27 N. C. (5 Ired.) 603; *Reg.* v. *Pierson,* 1 Salk. 382.

''A 'whore' is a woman given to promiscuous commerce with men, usually for hire'': Bishop on Statutory Crimes (2 ed.), § 715; 40 Cyc. 933.

A prostitute is often defined as a female given to indiscriminate lewdness for gain (*Davis* v. *Sladden,* 17 Or. 259, 264 (21 Pac. 140); Bishop on Statutory Crimes, § 641); although it has been held that gain is not necessary: 32 Cyc. 732. The word ''prostitution'' has no common-law meaning: *People* v. *Cummons,* 56 Mich. 544 (23 N. W. 215), and to be a common prostitute was not at common law indictable as a distinct and substantive offense: 32 Cyc. 732.

It makes no difference then whether we construe the words used by the defendant to mean the acts of

incontinence, or the condition produced by those acts;
for in neither event do the words import a crime
at common law, since neither a private act of incon-
tinence, even though repeated with many men, nor the
condition of being a prostitute, constitutes a crime;
and therefore under the common law to say of a
woman she is a whore, or a prostitute, or by other
language to impute unchastity to her, was not actionable
able *per se: Boyd* v. *Brent,* 3 Brev. (S. C.) 241;
*Underhill* v. *Welton,* 32 Vt. 40; *Linney* v. *Maton,* 13
Tex. 449; *Reg.* v. *Pierson,* 1 Salk. 382; *Douglas* v.
*Douglas,* 4 Idaho, 293 (38 Pac. 934); *Battles* v. *Tyson,*
77 Neb. 563 (110 N. W. 299, 15 Ann. Cas. 1241, 24
L. R. A. (N. S.) 577); *Pollard* v. *Lyon,* 91 U. S. 225
(23 L. Ed. 308); *Davis* v. *Sladden,* 17 Or. 259, 261
(21 Pac. 140); 17 R. C. L. 281.

This rule of the common law that spoken words
imputing unchastity to a female are not actionable
*per se,* because not imputing a crime, is gradually,
but surely, undergoing a change. This change is
being brought about both by statute and by judicial
decision. In England a change was wrought by the
Slander of Women Act, 1891, Stat. 54, 55 Vict., Chap-
ter 51, which enacts that words imputing unchastity
or adultery to a woman or girl shall be actionable
without proof of special damage. In America simi-
lar statutes have been passed in a number of the
states, while in other states the courts, declaring the
old rule to be a reproach upon the law, have repudi-
ated the arbitrary and harsh rule of the common law,
and held that words imputing unchastity to a female
are actionable *per se,* even though not involving a
criminal offense. If the question were *res integra,*
the writer would take the view that this court should
adopt the better and by far the more logical rule that

words imputing unchastity are actionable *per se,* even though they do not involve a criminal offense; but in this jurisdiction the question is foreclosed by the holding in *Davis* v. *Sladden,* 17 Or. 259 (21 Pac. 140), where it was squarely decided that the common-law rule controlled; and consequently relief from the harsh rule now governing in this jurisdiction must come, and, as it seems to the writer, should come, from the legislature.

In many and probably most of the states of the Union an act of incontinence in some or many of its different forms is made punishable criminally, with the result that in such jurisdictions words imputing unchastity are in many instances actionable *per se,* for the reason that in such instances they impute a crime involving moral turpitude. In some American jurisdictions the common law has been followed without objection; but in others, although adhering to the old rule, the courts have not done so without protesting loudly and bitterly: *Williams* v. *Riddle,* 145 Ky. 459 (140 S. W. 661, Ann. Cas. 1913B, 1151, 36 L. R. A. (N. S.) 974); *Linney* v. *Maton,* 13 Tex. 449; *Battles* v. *Tyson,* 77 Neb. 563 (110 N. W. 299, 15 Ann. Cas. 1241, 24 L. R. A. (N. S.) 577); *Jones* v. *Herne,* 2 Wils. 87; *Lynch* v. *Knight,* 9 H. L. Cas. 577 (8 Jur., N. S., 724, 5 L. T. 291, 8 Eng. Rul. Cas. 382); *Smith* v. *Silence,* 4 Iowa, 321 (66 Am. Dec. 137); *Landerback* v. *Moore,* Tappan (Ohio), 349, Appendix A; 17 R. C. L. 280, 282.

4. In this state the act of fornication is not made a substantive offense punishable criminally; and an act of incontinence becomes a crime only when there is some accompanying element; as, for example, marriage of one of the parties. In this state adultery is a crime, and therefore to speak of a married woman

as a prostitute is to charge the commission of a crime: *Davis* v. *Sladden,* 17 Or. 259 (21 Pac. 140). In the instant case, however, the plaintiff is an unmarried woman.

The defendant argues that the words spoken by the defendant impute a violation of Section 2087, L. O. L., which reads thus:

"If any person shall willfully and wrongfully commit any act which grossly injures the person or property of another, or which grossly disturbs the public peace or health, or which openly outrages the public decency and is injurious to public morals, such person, if no punishment is expressly prescribed therefor by this Code, upon conviction thereof, shall be punished * * ."

This statute was designed to cover offenses against the public peace, the public health, and the public morals, not elsewhere made punishable by the Code, and which were known at common law as "indictable nuisances": *State* v. *Waymire,* 52 Or. 281, 285 (97 Pac. 46, 132 Am. St. Rep. 699, 21 L. R. A. (N. S.) 56). We must therefore look to the common law to ascertain what acts openly outrage the public decency and are injurious to public morals: 29 Cyc. 1279.

5–7. Before inquiring about the nature of acts which were indictable nuisances under the common law, we should remind ourselves that the words used by the defendant are to be taken in their ordinary sense, and as they would naturally be understood by those to whom they were addressed; and it must also be remembered that innuendos cannot extend the meaning of words beyond their natural import. An innuendo can only serve to explain some matter already expressed. It may show the application, but it cannot add to, or enlarge, or change the sense of words:

*Davis* v. *Sladden,* 17 Or. 259 (21 Pac. 140); *Battles* v. *Tyson,* 77 Neb. 563 (110 N. W. 299, 15 Ann. Cas. 1241, 24 L. R. A. (N. S.) 577); 17 R. C. L. 312; *Feast* v. *Auer,* 28 Ky. Law, 794 (90 S. W. 564, 4 L. R. A. (N. S.) 560); *State* v. *Conklin,* 47 Or. 509, 516 (84 Pac. 482). With these rules of construction in mind we may again turn to Section 2087, L. O. L.

Although at common law a single act of private incontinence was not indictable, one in a public place and witnessed by people was indictable (Bishop on Statutory Crimes (2 ed.), § 711); and although at common law the mere cohabitation of a man and woman between whom the bond of marriage did not exist was not a crime, yet it was a crime if something publicly indecent existed in the manner of association: 20 R. C. L. 406; *Adams* v. *Commonwealth,* 162 Ky. 76 (171 S. W. 1006, L. R. A. 1916C, 651). In the absence of legislation, fornication and adultery were not crimes under the common law, unless accompanied by such circumstances as *per se* constituted a misdemeanor, as, for example, when it was open or notorious amounting to a public nuisance: 1 Bishop's New Cr. Law, 38; 1 R. C. L. 632; *Richey* v. *State,* 172 Ind. 134 (87 N. E. 1032, 139 Am. St. Rep. 362, 19 Ann. Cas. 654). Generally all acts of gross and open lewdness, are indictable at common law: 1 Bishop New Cr. Law, § 500; 2 Wharton's Cr. Law (10 ed.), § 1432. Again noticing Section 2087, L. O. L., it will be observed that, as said in *State* v. *Nease,* 46 Or. 433, 443 (80 Pac. 897, 899), the legislature embodied ''in the statute, as a description of the offenses prohibited, the essential ingredients of a common-law nuisance.''

To say of an unmarried woman that she is a prostitute, or a whore, is merely to ascribe to her a condi-

tion brought about by acts of incontinence without regard to whether there was or was not, in any one or more of the acts of incontinence producing the result or condition of being a prostitute or a whore, any accompanying element, as for example, marriage of one of the parties making the act adultery in this state, or blood relationship of the parties within a certain degree, making the act incest. The statute makes it an offense to use profane language upon any grounds used as a watering place outside of any incorporated city; and yet to say of a man that he is profane would not ordinarily be understood to mean that he used profane language at the place prohibited by law. It is true that it is unlawful to keep a bawdy-house, but it is also true that the condition ascribed to the plaintiff by the defendant does not necessarily imply the keeping of a bawdy-house; nor indeed does it necessarily imply that the plaintiff was an inmate of such a house. A female may gain for herself the condition named by the defendant by performing the acts privately and in as many different places as there are acts. The words used by the defendant do not imply public and open acts of incontinence any more than they imply private acts of incontinence. The words do imply acts of incontinence for hire, but no more. In brief, an act of incontinence, or repeated acts of incontinence may or may not be punishable criminally, depending upon the accompanying circumstances. There are different circumstances, which, if accompanying an act of incontinence, make the act a crime; and there are as many different classes of sexual offenses as there are different classes of circumstances producing criminality. When, therefore, words, such as those used by the defendant, are spoken of a per-

son, one can only conjecture whether there was or was not an accompanying element of criminality.

The words spoken by the defendant, when given the meaning which they are ordinarily understood to carry, cannot be said to impute the commission of a crime; and therefore are not actionable *per se;* and although the words uttered by the defendant do impute unchastity to the plaintiff, that circumstance does not render them actionable *per se,* but the plaintiff must, before she can recover, allege and prove special damage. The plaintiff did not allege, nor did she attempt to prove, special damage, and therefore the judgment must be affirmed. AFFIRMED.

McBRIDE, C. J., and BENSON and BURNETT, JJ., concur.